C. E. NEEDHAM v. THE SAN FRANCISCO AND SAN JOSÉ RAILROAD COMPANY.

DAMAGES WHERE BOTH PARTIES ARE TO BLAME.—The reason why the law does not hold the defendant responsible for damages where the plaintiff has by his negligence or wrongful act contributed to the result complained of, is, not that the wrong of the plaintiff justifies or excuses the defendant, but because it is impossible to apportion damages between the parties; and wherever this impossibility does not exist, the defendant's exemption from liability does not exist.

IDEM.—The rule releasing the defendant from responsibility for damages, in cases where the plaintiff by his negligence or wrong contributed to the result, is confined to cases where the act of the plaintiff is the proximate cause of the injury. Proximate cause means negligence at the time the injury happened.

CAL. REPS. XXXVII—52

37 409
79 75
37 409
85 70
37 409
86 383
37 409
88 406
37 409
97 169
37 409
103 545
37 409
115 114
37 409
118 63
37 409
135 297
135 298
37 409
140 522

JUSTIFYING ONE WRONG BY ANOTHER.—No more in law than in morals can one wrong be justified or excused by another.

LIABILITY FOR INJURY TO A WRONGDOER.—A person is bound to conduct himself with reasonable care and prudence towards a wrongdoer, and if he can so conduct himself and does not, he is liable if injury is sustained by the latter.

INJURY TO ANIMALS BY RAILROAD COMPANY.—If the plaintiff is guilty of negligence or even of possible wrong in placing his animals on a railroad track, yet the railroad company are bound to exercise reasonable care and diligence in the use of their road; and if for want of that care the animals are injured, the company is liable. In such case the company is also bound to use reasonable care and diligence in removing the animals.

NEGLIGENCE.—Negligence is not absolute or intrinsic, but always relative to some circumstance of time, place, or person.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The defendant appealed.
The other facts are stated in the opinion of the Court.

*C. B. Younger*, for Appellant.

The appellant being in the lawful use and enjoyment of its rights, would have done no injury to respondent if his mare had not strayed on the railroad track; and, as she was there trespassing, the law did not, in respect to her, enjoin it as a duty on appellant to take care not to injure her, and did not require appellant, in the proper use of its railway, to abate its speed or take any precaution whatever for the protection of respondent's property. (Stats. 1863, p. 581, and 1864, p. 98; *Tonawanda Railroad* v. *Munger*, 5 Denio, 255; *Bush* v. *Brainard*, 1 Cow. 78; *Munger* v. *Tonawanda Railroad*, 4 N. Y. 349; 13 Barb. 428; *Hance* v. *Cayuga Railroad*, 26 N. Y. 428.)

The fact that the mare was injured on the road raises no presumptions against appellant. (*Carren* v. *Warren*, 36 N. Y. 156; and *Lane* v. *Crobie*, 12 Pick. 177.) A new trial should have been granted, because the evidence does not show that appellant's employés were guilty of gross negligence in removing the mare from the railroad track. (*Hat-*

*field* v. *Roper*, 21 Wend. 615; *Holbrook* v. *U. and S. R. R.*, 2 Kernan, 236.)

*S. O. Houghton,* for Respondent.

The New York cases cited by appellant's counsel sustain the position assumed by him, but it is submitted that those cannot, upon principle, be sustained, and they have not been followed in other States. It appears that the New York rule obtains only in cases between railroad companies and individuals, while in cases between individuals the correct rule is adopted. The defendant in this case had an undoubted right to cause the removal of the mare of the plaintiff from its road. Plaintiff insists that in the exercise of that right defendant's employés were bound to use ordinary care, and that defendant was responsible for the injuries done to the mare in removing her from the road, if, by the exercise of ordinary care by its employés, she could have been removed without injury.

No question is made that if the mare had, through the negligence of plaintiff, gone upon defendant's road, and such negligence was the proximate cause of the injuries done her, the plaintiff would not be entitled to recover without proving that the injury was either wanton or willful. (*Butterfield* v. *Forrester*, 11 East, 60; *Mayor of Colchester* v. *Brooks*, 7 A. & E., N. S., 339; *Vere* v. *Lord Cawdor*, 11 East. 568; *Davies* v. *Mann*, 10 Mees & Wells. 545; *Isbell* v. *The New York and New Haven R. R. Co.*, 27 Conn. 403; *Trow* v. *Vermont Central R. R. Co.*, 24 Vt. 494; *Kerwhacker* v. *The Cleaveland C. and R. R. Co.*, 3 Ohio St. 172; *The Cleaveland C. and C. R. R. Co.* v. *Elliott*, 4 Ohio St. 475; *Bird* v. *Holbrook*, 4 Bing. 628; *The New Albany S. R. R. Co.* v. *McNamara*, 11 Ind. 544; *Central Railroad and Banking Co.* v. *Davis*, 19 Geo. 437; *Totten* v. *Cole*, 33 Miss. 138; *Tally* v. *Ayers*, 3 Sneed, Tenn., 677; *Broom* v. *Lynn*, 31 Penn. St. 510; *Richmond* v. *Sacramento Valley R. R. Co.*, 18 Cal. 356.)

By the Court, SANDERSON, J.:

This is an action to recover the value of a mare which is alleged to have become valueless by reason of certain injuries sustained by her while trespassing upon the defendant's road, through gross negligence of the defendant's servants while removing her. The plaintiff recovered a verdict in the Court below, and the defendant applied for a new trial upon the grounds : first, that the verdict was contrary to the evidence; and second, that the Court erred in its charge to the jury.

The plaintiff alleges that the defendant had failed to fence its road, and for that reason the mare came upon it; that being so upon the road, the defendant caused her to be removed in such a grossly negligent manner that by reason thereof she sustained the injuries in question. Both of these propositions are denied by the defendant and the contrary averred.

The testimony shows that the mare, in company with ten or fifteen other horses, escaped (probably through a gate carelessly left open by some one not known) from the premises of the plaintiff (situated about a mile and a half from the defendant's road) into a public highway which intersects the defendant's road; that she strayed along the highway until she came to and upon the defendant's road; that she was thus upon the defendant's road when a freight train in charge of the defendant's servants came along at the usual and ordinary rate of speed; that upon discovering the horses the engineer sounded the whistle for the double purpose of frightening the horses off the track, and warning the brakemen of danger ahead. That at the sound of the whistle the mare started and ran at the top of her speed along the track in advance of the train, until she came to a trestle bridge, upon which she leaped at full speed and fell near its center. That this bridge spanned a narrow watercourse, which was at the time dry, at the height, by actual measurement, of seven feet. That the train "slowed up" and came to a halt

within about twenty yards of the bridge. That the servants of the defendant in charge of the train (six in number) accompanied by a man who was residing near by, and who testified at the trial on behalf of the plaintiff, went to the bridge for the purpose of extricating and removing the mare. That they found her lying, in the language of the plaintiff's witness, in a bad position, with one fore leg resting upon the rail and the other upon a tie, with one hind leg doubled up under her body and resting upon a tie, and the other hanging down between two ties. That the mare weighed about a thousand pounds. That they all took hold of her by her mane, tail, and legs, and endeavored to remove her by that means, but found themselves unable to do so. That they then consulted as to the best way of removing her. That they considered it probable that some of her limbs were broken, or she was otherwise injured. That there were no ropes about the train with which they could bind her. That they had a large switch rope, about four inches in diameter, and they first thought it best to try and attach it to the mare, and by it haul her off the bridge; but, upon further consultation, it was considered impracticable to do so, and it was finally agreed that the best way of which the circumstances admitted was to saw off the ties and let her down through the bridge. That a passenger train would be along in about an hour, and it was necessary to act with promptness. That they sawed off the ties and let her fall through the bridge. That after striking the ground she jumped up and ran off, as though unhurt by her fall.

Four of the defendant's servants, who were present and assisted in removing the mare, were witnesses for the defendant at the trial. They all testified that they exercised as much care in letting the mare through the bridge as was possible under the circumstances, and that they adopted that method of removing her, in the belief that it was less likely to result in injury to the mare than any other available mode. To this point but one witness testified on the part of the plaintiff. He resided near the place where the event in

question occurred, and was present and assisted the employés of the defendant in trying to remove the mare, and finally in letting her through the bridge. It was the opinion of this witness that the mare might have been bound by ropes, so as to have prevented her from struggling, and then hauled off the bridge without any serious injury, but he imputed no want of care to the employés of the defendant in executing the plan which they adopted. This witness also stated that he had ropes at his house which could have been obtained and used for that purpose, but he did not suggest his plan to the employés of defendant, nor offer to furnish them ropes to carry out his plan, nor inform them that he had any ropes which could be used in removing the mare.

The plaintiff offered no proof in support of his allegation that the mare came upon the railroad by reason of the defendant having failed to inclose its road by lawful fences, but, on the contrary, admitted that his allegation in that respect was false, and that the defendant's road was inclosed by good and sufficient fences. Nor was there anything in the testimony, aside from inference, tending to show whether the injury to the mare was received in falling through the bridge, or in leaping, at full speed, and falling upon it, in the manner which has been stated.

In view of the foregoing testimony, the Court, at the request of the plaintiff, charged the jury as follows: "First —Even though the mare of plaintiff was wrongfully upon the road of defendant, their employés were not, for that reason, justified in injuring her in effecting her removal from the road. Second—If the mare of plaintiff was injured by want of ordinary care on the part of the employés of defendant in removing her from the railroad, or by reason of their negligence in doing so, the fact that she was wrongfully upon the road does not protect the defendant from liability. Third—If the employés of the defendant had the means at hand, or if they could have obtained the means by the use of ordinary diligence, to have removed the mare from the bridge, and they did not resort to such means, they were

guilty of such negligence as entitles the owner of the mare to recover damages for any injuries done her in making such removal."

To all of which the defendant excepted.

The Court, at the request of the defendant, next charged the jury as follows: "First—There is no question in this case but that the railroad company had made and maintained good and sufficient fences on both sides of their track, and the company having fenced their track on both sides with good and sufficient fences, and having maintained such fences on both sides thereof, the mare of plaintiff was unlawfully on the track, and if the jury believe from the evidence that she was injured, without any fault of defendant, by jumping on or falling on the bridge of the defendant, they must find for the defendant.  Second—That the railroad company having made and maintained, on both sides of their track, good and sufficient fences, and the said mare having strayed upon the said line of railroad, was there unlawfully; and if while there she ran on defendant's bridge and was injured, they must find for the defendant; or if said mare, being so unlawfully on said road, ran on said bridge, and the defendant's servants, in the use of ordinary care and diligence, injured the said mare in removing her from the bridge, they must find for the defendant.  Third—That if the jury believe from the evidence that defendant's employés endeavored in good faith to get said mare off the bridge without injury, and used such care as men would ordinarily use under similar circumstances, and in so doing the mare was injured, they must find for the defendant.  Fourth—That if the jury believe from the evidence that the mode of getting said mare off the bridge was not the best way, still, if the railroad employés honestly believed or supposed that it was the best and safest way of extricating her, they must find for the defendant."

The defendant next asked for the following instructions: "First—That the burden of proof is on the plaintiff, and he must show himself free from negligence in the escape of his

mare on the track; and if the jury believe he was guilty of negligence or carelessness, he cannot recover, unless the defendant's servants were guilty of gross negligence in removing the mare from the bridge, and the injury to her arose from such gross negligence. Second—The plaintiff must show that he himself was free from negligence; and if the jury believe from the evidence that the mare escaped from plaintiff's own premises through want of sufficient fences on his part, or by reason of his gate being left carelessly open by plaintiff, or those who used his gate by his permission, and escaped thence on the track of the defendant, which had been and was at the time sufficiently fenced on both sides, they must find for the defendant, unless they find that the defendant, or its servants, injured the mare through gross negligence; and if the defendant's servants used reasonable means and used their honest judgments in trying *bona fide* to get the mare off the bridge, even though such effect may not, in the opinion of the jury, have been the safest, it would not be gross negligence."

These instructions the Court refused upon the ground that it had already instructed the jury upon the points involved, as follows: "First—The owner of an animal who allows it to run at large takes all the risk of its loss or injury by unavoidable accident. Second—It is for plaintiff to show that he exercised reasonable care of his own property. If he was negligent in this respect, and, in consequence thereof, his mare escaped from his possession and control and trespassed upon the land of defendant, where it was unavoidably injured, he cannot recover for such injury, because it is traceable to his own fault. Third—Now, if you believe from the evidence that the mare of the plaintiff was kept by him in a field insufficiently fenced, or the gate of which was insecurely fastened or carelessly left open by the plaintiff or any one else, except the defendant or his employés, and in consequence of this she strayed from the field on to the railroad of the defendant, where she became entangled in one of the bridges of the road, and was unavoidably injured by

the employés of the defendant while honestly endeavoring to extricate her from her position by the reasonable use of means within their power, the plaintiff cannot recover, and your verdict should be for the defendant." To all of which defendant excepted.

It is claimed that the Court below erred in thus holding, in view of the fact that the mare came upon the railroad by the legal fault of the plaintiff; that the defendant was bound to exercise ordinary care in removing her, or that it was liable for any injury sustained by the mare in consequence of any acts of the defendant, unless such acts were heedless and wanton.

This view of the law seems to be sustained by the New York cases which counsel have cited. It has been held in that State that a railroad company is not liable for negligently running its engine upon and killing domestic animals found upon its road under circumstances similar to those presented by the record in this case. (*Tonawanda Railroad Company* v. *Munger*, 5 Denio, 255; same case, 4 Comstock, 349.) The reason given for this rule is that the owner of cattle found straying upon the road, although he may be guiltless of actual carelessness in allowing them to escape from his premises, is nevertheless guilty in law of a wrongful and negligent act, without which the injury complained of would not have happened, and, therefore, having thus co-operated in causing the injury which he has sustained, he cannot be allowed to recover, whatever may have been the negligence of the defendant. That the defendant has an unqualified property in its road, and an unqualified right to occupy and use it in whatever manner may suit its pleasure and convenience, and hence, whenever such occupation and use is wrongfully obstructed, the defendant may lawfully remove the obstruction in any manner which, under the circumstances, it may find most convenient, provided it stops short of wanton and malicious mischief. In the case above cited Mr. Chief Justice Beardsley said : "Negligence

is a violation of the obligation which enjoins care and caution in what we do.   But this duty is relative, and where it has no existence between particular parties, there can be no such thing as negligence in the legal sense of the term.   *A man is under no obligation to be cautious and circumspect towards a wrongdoer.*   A horse straying in a field, falls into a pit left open and unguarded; the owner of the animal cannot complain, for, as to all trespassers, the owner of the field had a right to leave the pit as he pleased, and they cannot impute negligence to him.   But injuries inflicted by design are not thus to be excused.   A wrongdoer is not necessarily an outlaw, but may justly complain of wanton and malicious mischief." (Pages 266, 267.)   In keeping with this definition of negligence, he also said in a preceding portion of his opinion: "The present action is founded on the alleged negligence of the agents and servants of the defendants in running their engine on the railway, whereby, as is charged, the plaintiff's oxen were killed.   It is not charged the act was done *designedly* by the persons in charge, but, simply, that it occurred through negligence and want of care.   It is a well settled rule of law that such an action cannot be sustained, if the wrongful act of the plaintiff co-operated with the misconduct of the defendants, or their servants, to produce the damage sustained.   I do not mean that the co-operative act of the plaintiff must be wrong in intention to call for the application of this principle, for such is not the law.   The act may have been one of mere negligence on his part, still he cannot recover.   Or his beast, while trespassing on the land of another person, and that without the consent or knowledge of its owner, may have been damnified through some careless act of the owner of the land, yet the fact of such trespass constitutes a decisive obstacle to any recovery of damages for such an injury.   It is, strictly speaking, *damnum absque injuria.*"   This view of the law was sustained by the Court of Appeals in the same case, and seems to have become the settled law of that State.   (See, also, *Wilds* v. *Hudson River R. R. Co.*, 24 N. Y. 430.)

To this doctrine, however, notwithstanding the very respectable authority by which it is sustained, we are unable to assent. About the general rule upon which it is founded —that a plaintiff cannot recover for the negligence of the defendant, if his own want of care or negligence has in any degree contributed to the result complained of—there can be no dispute. (*Gay* v. *Winter*, 34 Cal. 153.) The reason of this rule is, that both parties being at fault, there can be no apportionment of the damages, and not that the negligence of the plaintiff justifies or excuses the negligence of the defendant, which would seem to be the true reason in the estimation of the New York Courts. The law does not justify or excuse the negligence of the defendant. It would, notwithstanding the negligence of the plaintiff, hold the defendant responsible, if it could. It merely allows him to escape judgment because, from the nature of the case, it is unable to ascertain what share of the damages is due to his negligence. He is both legally and morally to blame, but there is no standard by which the law can measure the consequences of his fault, and therefore, and therefore only, he is allowed to go free of judgment. The impossibility of ascertaining in what degree his negligence contributed to the injury being then the sole ground of his exemption from liability, it follows that such exemption cannot be allowed where such impossibility does not exist; or, in other words, the general rule that a plaintiff who is himself at fault cannot recover, is limited by the reason upon which it is founded.

The Golden Rule is a corner stone of the law as well as of morals, and in the department of the former finds its expres sion in the maxim: *Sic utere tuo, ut alienum non lœdas.* No more in law than in morals can one wrong be justified or excused by another. A wrongdoer is not an outlaw, against whom every man may lift his hand. Neither his life, limbs, nor property are held at the mercy of his adversary. On the contrary, the latter is bound to conduct himself with reasonable care and prudence, notwithstanding the fault of

the former; and if, by so doing, he can avoid injuring the person or property of the former, he is liable if he does not, if, by reason thereof, injury ensues.  The error of the New York Courts lies in the fact that they ignore all distinction between cases where the negligence of the plaintiff is proximate and where it is remote, and in not limiting the rule, which they announce, to the former.

The false reasoning of the New York Courts has been ably exposed by the Supreme Court of Connecticut in the case of *Isbell* v. *The New York and New Haven Railroad Company*, 27 Conn. 404.  It was there said: "A remote fault in one party does not of course dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated.  Common justice and common humanity, to say nothing of law, demands this; and it is no answer for the neglect of it to say that the complainant was first in the wrong, since inattention and accidents are to a greater or less extent incident to human affairs.  Preventive remedies must therefore always be proportioned to the case in its peculiar circumstances—to the imminency of the danger, the evil to be avoided, and the means at hand of avoiding it. And herein is no novel or strange doctrine of the law; it is as old as the moral law itself, and is laid down in the earliest books on jurisprudence.  A boy enters a dooryard to find his ball or arrow, or to look at a flower in the garden; he is bitten and lacerated by a vicious bulldog; still, he is a trespasser, and if he had kept away would have received no hurt.  Nevertheless, is not the owner of the dog liable?  A person is hunting in the woods of a stranger, or crossing a pasture of his neighbor, and is wounded by a concealed gun, or his dog is killed by some concealed instrument, or he is himself gored by an enraged bull; is he in all these cases remediless because he is there without consent?  Or, an intoxicated man is lying in the traveled part of the highway, helpless, if not unconscious: must I not use care to avoid him?  May I say that he has no right to incumber the high-

way, and therefore carelessly continue my progress, regardless of consequences? Or, if such a man has taken refuge in a field of grass or a hedge of bushes, may the owner of the field, knowing the fact, continue to mow on or fell trees as if it was not so? Or, if the intoxicated man has entered a private lane or byway, and will be run over if the owner does not stop his team which is passing through it, must he not stop them? These are instances, I am aware, of personal rights, but what is true in relation to the person is essentially true in relation to dumb animals and other kinds of property, though perhaps the rule would be applied in the latter case with less strictness. It must be so, that an unnecessary injury negligently inflicted in these and kindred cases is wrong, and therefore unlawful. If assailed, a man may do what is necessary to defend himself against the assault, but he may not become himself the assailant. He may defend his property, but he may not, in doing it, make use of unnecessary violence and cease to use all care as to the injury which he inflicts. The duties which men owe to each other in society are mutual and reciprocal, and faulty conduct on the part of another never absolves one from their obligations, though such conduct may materially affect the application of the rule by which this duty is to be determined in the particular instance." In conclusion the Court said: "It must not be supposed that we have overlooked or slightly examined the numerous respectable authorities cited by the defendant's counsel. Some of them, as we view them, only add strength and force to the views which we have expressed; some rest on principles wholly distinct from those involved in the doctrine we maintain, while others, and especially those from the New York Reports, if we understand them, are at variance, as we most fully believe, not only with our own law, but with the common law of England."

This distinction between cases of proximate and remote negligence on the part of the plaintiff in the application of the rule in question has also been declared by the Supreme

Court of Vermont, in the case of *Trow* v. *Vermont Central Railroad Company*, 24 Vt. 494, where it is said: "This leads our investigation to the question whether an action can be sustained when the negligence of the plaintiff and the defendant has mutually co-operated in producing the injury for which the action is brought.   On this question the following rules will be found established by the authorities:  When there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained.   In the use of the words 'proximate cause' is meant negligence at the time the injury happened.   In such case no action can be sustained by either, for the reason 'that as there can be no apportionment of damages, there can be no recovery.'   So, where the negligence of the plaintiff is proximate, and that of the defendant is remote, or consisting in some other matter than what occurred at the time of the injury, in such case no action can be sustained, for the reason that the immediate cause was the act of the plaintiff himself.   Under this rule falls that class of cases where the injury arose from the want of ordinary or proper care on the part of the plaintiff at the time of its commission.   These principles are sustained by *Hill* v. *Warren*, 2 Stark, 377; 7 Met. 274; 12 Met. 415; 5 Hill, 282; 6 Hill, 592; *Williams* v. *Holland*, 6 C. & P. 23.   On the other hand, when the negligence of the defendant is proximate and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault.   This seems to be now settled in England and in this country.   Therefore, if there be negligence on the part of the plaintiff, yet if at the time when the injury was committed it might have been avoided by the defendant in the exercise of reasonable care and prudence, an action will lie for the injury.   So in this case, if the plaintiff were guilty of negligence, or even of positive wrong, in placing his horse on the road, the defendants were bound to the exercise of reasonable care and diligence in the use of their road

and management of the engine and train; and if for want of that care the injury arose, they are liable."

The same rule has been established in Ohio. (*Kerwhacker* v. *The C. C. and C. R. R. Co.*, 3 Ohio St. 172; *The C. C. and C. R. R. Co.* v. *Elliott*, 4 Ohio St. 474. Also, in England: *Bridge* v. *The Grand Junction Railway Company*, 3 M. & W. 256; *Davies* v. *Mann*, 10 M. & W. 546; *Illidge* v. *Goddwin*, 5 C. & P. 190; *The Mayor of Colchester* v. *Brooks*, 53 E. C. L. 376.

Our conclusion upon this branch of the case is, that the Court below did not err in holding that the remote negligence of the plaintiff in allowing his mare to escape from his premises did not absolve the defendant from its obligation to observe ordinary care and prudence in removing her from its road.

After a careful examination of the testimony, however, we are satisfied that it fails to make a case of negligence. The testimony shows that the plan adopted for the purpose of removing the mare was executed with all possible care. If there was any negligence at all, it was exhibited in the selection of the plan, and not in its execution. All the witnesses, with a single exception, unite in saying that the plan was the only one which, under the circumstances and with the means at hand, could have been adopted. One of the witnesses, it is true, testified that in his opinion the mare could have been removed in safety had ropes and other appliances been used, and that ropes could have been obtained at his house; but he admits that he made no suggestion to that effect. If he entertained that opinion *at the time*, it is a little surprising that he remained so reticent, and his failure to speak suggests that his opinion may have been the result of subsequent speculation rather than present conviction. But be that as it may, his opinion was that of one better advised as to the means which were available, and ought not to be made the test of the conduct of others, who were possessed of less information. "Negligence is the omission to do something which a reasonable man, guided by those con-

siderations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do; it is not absolute or intrinsic, but always relative to some circumstance of time, place, or person." (Broom's Legal Maxims, 329.)

Subjected to this test, we think the defendant cannot be held obnoxious to the charge made in this case. The peculiar business of the defendant must not be overlooked. It requires speed and regularity of movement. A delay in the movements of trains leads to the inconvenience of the public, and may possibly result in personal injury. The security and safety of passengers must be looked to, and to that end the time and speed which have been adopted for the transportation of passengers and freight must be adhered to as near as possible. Weighed in the light of such considerations, we think all that was required of the defendant's employés, under the law as declared in this opinion, was done by them.

Judgment reversed and new trial ordered.