[Civ. No. 3502. Third Appellate District.—April 30, 1928.]

MAUDE MEREDITH, Appellant, v. KEY SYSTEM TRANSIT CO. (a Corporation) et al., Respondents.

Preston & Duncan and Geo. Allan Smith for Appellant.

Brobeck, Phleger & Harrison and Frank S. Richards for Respondents.

PLUMMER, J.—This cause is before us on appeal by the plaintiff from a judgment entered in favor of the respondents in an action prosecuted to recover damages for the death of the husband of the plaintiff resulting from a collision between an automobile driven by the deceased and a train operated by the Key System Transit Company.

The record shows that on the morning of November 21, 1923, the deceased was driving in a westerly direction on Forty-sixth Street in the city of Oakland. That Forty-sixth Street is intersected by a certain other street known as and called Linden Street, upon which latter street the Key System Transit Company maintains two sets of double railroad tracks, that is, four different tracks. Linden Street, where it crosses Forty-sixth Street, extends in a northerly and southerly direction. At the intersection of Forty-sixth and Linden Streets the roadway and the rails of the railroad are practically flush, but northerly therefrom the ties on which the rails are located are visible and the rails themselves all stand above the surface of the street. Cross-arms and other silent warnings are shown by the testimony to be located on the intersection referred to showing the presence of the railroad lines. The trains of the respondent com-

pany are operated by electricity. It appears from the record that between 7 and 8 o'clock in the morning some twenty-four hour trains operated by the respondent cross the intersection of Forty-sixth Street. The collision which resulted in the death of the plaintiff's husband occurred at about 7:30 A. M. The morning was clear; apparently the atmosphere was free from fog, and it does not appear that there were any stationary or other objects to obstruct a view of moving trains for a distance of several hundred feet. On the easterly set of double tracks maintained by the respondent were operated the Northbrae and Claremont trains. On the westerly set of tracks were operated the Berkeley trains. On the morning in question the deceased, accompanied by one Henry Forsberg, was driving westward on Forty-sixth Street in a "Jewett" automobile. Upon reaching the intersection of Forty-sixth Street with Linden Street a train from the Oakland mole was observed traveling northward on the easterly track of the double set of tracks over which the Berkeley trains were operated. The automobile was halted between the two sets of double tracks, a space which has a width of a trifle over twenty-one feet. The testimony of Forsberg is to the effect that he and the deceased were working at the same place; had been going to work at about the hour referred to every morning for some two months and a half; that they frequently observed trains passing to and fro at the intersection of Forty-sixth and Linden Streets; that on the morning in question the deceased was operating the car and stopped the same within a few feet of the track on which the northbound Berkeley train was being operated; that they stopped there for a few seconds for the north-bound Berkeley train to pass by; that after the north-bound Berkeley train had passed by, the deceased, who had the gear-shift of his automobile in neutral, threw it into low gear, started the car across the westerly double set of tracks on which the Berkeley trains were operated, had cleared the easterly line of said tracks, and as they reached a position on the westerly tracks upon which the south-bound Berkeley trains were operated, he observed a south-bound Berkeley train approaching, which, at the time he observed it, was so close upon them that he knew they were going to be hit. The collision threw the "Jewett" automobile a number of feet, some of the wit-

nesses testifying 40 feet. The automobile rolled over and over and the deceased received such injuries that he subsequently died therefrom. Some witnesses testified that the automobile which was being driven by the deceased did not stop for the passage of the north-bound Berkeley train, but only halted, and that the automobile, as soon as the rear car of the north-bound train had cleared the space in front of the automobile, was started forward. The statement is made by appellant that the automobile was not started until the rear end of the last car of the north-bound train had reached a point some 75 feet northward. We find no testimony, however, indicating just how far the rear end of the north-bound Berkeley train had cleared the crossing before the automobile was started westward. Practically all of the witnesses other than the witness Forsberg testified that the whistle of the south-bound train was being blown at intervals as it approached the crossing of Forty-sixth Street. The south-bound train which collided with the "Jewett" automobile was composed of five cars, three of which, the testimony shows, were 70 feet in length and two of which were 80 feet in length, making a train of at least 370 feet in length, assuming that the length of the cars included bumpers and couplings. Otherwise the train would be a trifle longer. The record shows, also, that as one is approaching the tracks on Linden Street where they intersect Forty-sixth Street, both sets of double tracks are visible to the northward for a distance of some 800 feet and that moving trains thereon can be observed for that distance.

The verdict of the jury was in favor of the respondents, and the appellant concedes that the evidence is sufficient to support the verdict. It is urged, however, that a new trial should be granted on the ground that the court misdirected the jury, and also erred in the admission of testimony. It being admitted that the testimony is sufficient to support the verdict, we have only to determine whether the alleged errors, if errors there were, resulted in a miscarriage of justice, as under section 4½ of article VI of the constitution, no new trial can be granted for the errors alleged herein unless there has been a miscarriage; and under section 475 of the Code of Civil Procedure it must appear that a different result would have been probable if such alleged errors had not occurred.

■ The appellant first alleges that the court committed error in refusing to give requested instructions numbers 2 and 4. These instructions are as follows:

"Request No. 2.

"I instruct you that if you find by a preponderance of the evidence, that a passing northbound train so obstructed the view of travelers about to cross the Berkeley tracks at 46th Street, of the southbound tracks and trains that were proceeding along them toward the 46th Street crossing, as to endanger the safety of travelers proceeding westerly along 46th Street to cross the Berkeley tracks, then it was the duty of the defendants, if reasonably necessary to protect such street travelers, as were themselves in the exercise of reasonable care, from being run down by a southbound train, to either modify the speed of the southbound train to such an extent as would be reasonably necessary for the protection of such street travelers; or to take such other reasonable precautions as would give to such travelers reasonable notice and warning of the approach of such southbound train."

"Request No. 6.

"I charge you that if plaintiff has proven by a preponderance of the evidence any one of the charges of negligence mentioned in these instructions; and you find by a preponderance of the evidence that such alleged negligence was the proximate cause of the injury to and death of the decedent, then your verdict will be for the plaintiff; unless you further find by a preponderance of the evidence, that the decedent was guilty of contributory negligence as defined in these instructions."

An examination of the record, however, shows that all the matters contained in these refused instructions were included in other instructions given by the court, which were, if anything, more favorable to the plaintiff than the instructions requested. This is shown by instruction number 16, which we set forth in full:

"One of the grounds of alleged negligence charged in the complaint is that the defendant trustees of the traction system, carelessly and negligently failed to place, or maintain a flagman, or to show or give any signal, in addition to the blowing of the whistle at the 46th Street crossing to warn or notify persons crossing, or about to cross the

tracks on 46th Street of the approach of said Berkeley train.

"The law imposes upon a traction company the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons lawfully traveling upon the public highway crossed by the traction system tracks and trains.

"If you find, from a preponderance of the evidence, that usually or frequently there are obstructions which interfere with the opportunity to see moving trains while travelers on the highway are approaching a crossing; that it is a much traveled and dangerous crossing; that ordinarily prudent men would have taken extra precautions in addition to the whistle signals; that the defendant trustees of the traction system failed to take any precautions, other than the whistle signals to warn travelers at said crossing; then it is for the jury to determine from the evidence, whether or not the failure to have at said crossing a flagman, wigwag, or other means of warning in addition to the whistle signals, was negligence; and if so, then whether or not such negligence was a proximate cause of the accident. If you so find then your verdict will be for the plaintiff, unless you shall further find from a preponderance of the evidence, that the decedent was guilty of contributory negligence as defined in these instructions."

Refused instruction number 6 is also covered as well by 8, 11, and 12 as by number 16. ▉ As instruction number 8 is alleged to be erroneous, we here set it forth:

"Before the plaintiff can recover in this action, it must appear by a preponderance of the evidence, that the defendant or their servants, were guilty of some act of negligence which proximately contributed to the accident. It must also appear likewise that the decedent was without fault or negligence on his part, which may in any wise have proximately contributed to the accident."

Other instructions were given by the court which fully and clearly instructed the jury as to the law applicable to this case, and especially to the point that contributory negligence on the part of the plaintiff, as alleged by the defendants, was a matter of defense to be proved by a preponderance of the testimony.

A number of authorities are cited by appellant from states other than California in support of the argument that instruction number 8 is erroneous. However, it is well settled by the decisions in this state that instruction number 8 given by the trial court to the jury in this case is a correct statement of the law. Without quoting therefrom, it is sufficient simply to cite the authorities so holding: *Metcalf* v. *Pacific Electric Ry.*, 63 Cal. App. 331 [218 Pac. 486] (citing *Robinson* v. *Western Electric Ry. Co.*, 48 Cal. 409; *Strong* v. *Sacramento & P. R. R. Co.*, 61 Cal. 326; *Sinclaire* v. *Pioneer Truck Co.*, 51 Cal. App. 174 [196 Pac. 281]; *Needham* v. *San Francisco & S. J. R. R. Co.*, 37 Cal. 409; Shearman & Redfield, vol. 1, pp. 238 and 239).

It is well settled by the foregoing authorities that if the negligence of the plaintiff contributes proximately to his injury, a defense is made out irrespective of the degree of such negligence, as there is no standard by which such negligence can be measured. All that is required is that the negligence of the plaintiff contributes proximately to his injury.

Exception is also taken to the concluding paragraph of instruction number 22, which reads as follows: "A driver of an automobile must use his senses of sight and hearing, when about to cross a railroad track, to ascertain whether a train is approaching, and if he fails to take such precaution, and such failure proximately contributes, in any degree whatever, to his injury, he is guilty of contributory negligence, and no recovery can be had for his injury or death." While it is admitted that this portion of instruction number 22 is technically correct and supported by the authorities which we have cited, it is urged that it is indefinite and uncertain in that it does not specify to what extent the driver must use his senses of sight and hearing and whether such use must or must not be continuous. The objection we think untenable. Every day the necessity of an automobile driver using his senses of sight and hearing is enforced by the increasing number of moving vehicles upon the streets of our cities. Every street intersection by reason of the increasing number of rapidly moving vehicles has become a potential danger zone and the driver of every automobile is becoming more and more under the necessity of using his senses of sight and hearing to escape possible

collisions and reasonable use of all his faculties to detect and avoid danger must be exercised by the drivers of automobiles. This we think is the true intent, meaning and application of the language used in instruction number 22.

We find no prejudice in the instructions given by the court to the jury in this case.

It is finally urged that the court committed error in the admission in evidence of a statement made by the witness Glocker to the defendant shortly after the occurrence of the collision. This statement is in the following words and figures: "1. Name: F. Glocker. Age: 75. Occupation: Bank messenger. 2. Residence: 3130 King. Place of business: San Francisco, Calif. 2½. Home phone: Berkeley 517 W. Business phone: Douglas 8600. 3. Did you see the occurrence of the accident? A. Yes. 4. Exact place on car (or street) where I was located. First car; front seat behind motorman; right side of car. 6. Did the accident occur at a street crossing? Yes. 9. If vehicle hit, what part? Side. 12. Within how many feet did the car stop after the accident? About 200 feet. 15. Did you feel the brakes applied before the collision? A. yes. 16. Did you feel any collision or jar or impact? Yes. 19. In what direction was the street car going? South. 21. Was the street car moving slow, moderate, or fast speed? Usual speed. 23. Was the street car bell (or whistle) sounded? Yes. 25. Was the driver (or pedestrian) careless in your opinion? Careless. 26. Do you consider the motorman or conductor, or both to blame? No.

The following is a general statement of the accident.

I was looking out of the side window toward Remar Bakery plant when I felt the air-brakes working just as we approached 45th. I just caught sight of an automobile in front of the train. It happened so quick and the position I was in I couldn't tell which way the auto was going. The motorman was blowing his whistle for more than a block, in fact was continually blowing before approaching crossing. No blame should be attached to motorman, as the party driving the automobile must have been deaf, dumb or drunk to try and cross in front of that train, as they surely must have heard the whistle, or saw the train coming. Dated November 23rd, 1923. F. Glocker."

This statement was admitted immediately upon the conclusion of the cross-examination of the witness Glocker, which cross-examination was as follows: "By Mr. Preston: Q. Was this an emergency whistle, or an ordinary whistle? A. Oh, regular whistling going along. Well, they blow continuously there all the time on all the trains. It is pretty hard to say whether it was an emergency or not. Q. In reality, Mr. Glocker, you are going more by the habit of trains to whistle by reason of the number of tracks, as you said? A. Yes. Q. You say they generally whistle, or always whistle, which is it? A. My opinion is they always whistle. I am pretty positive they did whistle. And I think, if I am right, I made the statement when the card was sent to me by the Key Route Company, stating the whistle was blown. If you have that statement you may look it up. Q. How far did you say the train traveled before it stopped? A. Well, about a car and a half length, or two lengths. Q. What distance would that be in feet? A. That is pretty hard to say. I don't know how long those cars are. I know it was down to the next corner. Q. Counsel for the defendant has kindly handed me this paper. Look that over and see whether or not that is what you gave, the statement after this accident? A. Yes, sir. Q. Now in this statement you say that the air brakes were applied at what place? A. This side of the Remar Bakery. Q. Didn't you say as follows: 'I was looking out of the side window towards the Remar Bakery plant, when I felt the air brakes working just as was approached 45th Street?' A. You see I made a mistake in the streets: 46th. Q. You say here, do you not, that you were looking toward the Remar Bakery Company? If you were at 46th you would be looking back at the Remar Bakery plant, would you not? Mr. Hynes: That clearly shows that it is a mistake. Mr. Preston: He says he was looking toward the plant. A. Isn't that the Remar Bakery on 46th or 45th? Q. It is 46th. This says: 'I was looking out of the side window toward the Remar Bakery plant?' A. Yes. 'When the air brakes were working, just as we approached 45th Street.' A. Well, that is where I made the mistake in putting down the wrong streets. The Court: It should have been 46th. The Court: I think that is correct, Mr. Preston. He was approaching 46th and looked out and saw the Remar Bakery. Mr. Preston: I believe we are

both wrong, Judge, from looking at it again; 'I was looking out of the side window towards the Remar Bakery plant when I felt the air brakes working'; and then they made a period there. 'Just as we approached 45th Street I just caught sight of an automobile in front of the train.' A. I meant to say 46th on that. Q. 'It happened so quick that the position I was in, I couldn't tell which way the automobile was going.' A. That is true. Q. I didn't understand you said this morning that you said you saw the automobile at all. A. I meant that when the train had collided with the automobile. I didn't know which way the automobile— which way it was going. That is true, too. Q. Had you seen the automobile? A. No, I didn't but I know they struck an automobile. Q. You say here you caught sight of an automobile in front of the train. Now, then, you say this: 'The motorman was blowing his whistle for more than a block,' is that— A. (Witness interrupting.) Approaching the place, yes. They blow right there continually as a rule. Mr. Preston: That is all.''

Respondent attempts to justify the admission of the statement made by Glocker by citing section 1854 of the Code of Civil Procedure, which provides as follows: ''When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence.'' As we read this section it does not support the respondent's contention. The statement in fact consists of twenty-six disconnected questions and answers. While the witness was, upon cross-examination, interrogated as to some of the question and answers, they were not introduced in testimony and the statement being mere hearsay and also the opinion of the witness, should have been excluded. We do not need to review the authorities cited by the appellant, supporting the contention that the admission of the statement was error, as a careful reading of the section seems to us to show the statement inadmissible. This, however, does not necessarily lead to a reversal of the judgment. The testimony of the witness Forsberg heretofore referred to, the person who was

riding with the deceased at the time of the collision, almost in and of itself precludes the possibility of the jury reaching a verdict in favor of the plaintiff. We here set forth the testimony of this witness in relation to the immediate facts attendant upon the collision: ''I saw the train when we were quite near the other track. We were right close to it, or on it, one of the two. I knew we were going to get hit. We were within inches of the track, that was the first I saw of the train going the other way. The train looked like it was right on top of me when I first saw it. Q. And do you know whether Mr. Meredith saw that train coming at that point or not? A. No, I do not. Q. You don't know whether he looked in that direction, do you? A. No. Q. How far away from you, that is from the automobile was this train when you first saw it? A. Looked to be like it was mighty close. Q. I know, but was it as close as I am to you? A. I don't know. I knew we were going to get hit. That is all I remember. I do not know if Mr. Meredith saw the train. Q. Mr. Meredith did not, as far as you were able to observe, did not make any effort to stop his automobile? A. No, sir. Q. And he did not make any effort to back up? A. No, sir, not that I know of. Q. From the time that you started the car, when the train went north, you were looking at the Remar Bakery? A. Well, I looked up the tracks too. Q. Where were you when you looked up the tracks? A. Just when we started up. Q. Just when you started? But you did not—when you came across the first track, that is the northbound track on which the train had gone to Berkeley, you did not then look north again? A. No, I don't believe I did. Q. And Mr. Meredith didn't look north as far as you know? A. Not as far as I know.'' Add to this testimony the fact that an unobstructed view of the defendant's tracks was possible from Forty-sixth Street to a distance north of some 800 feet, also the fact that the five-car train moving southward on the Berkeley tracks was at least 370 feet in length, it would seem almost inconceivable that an automobile driver using his senses of sight and hearing would escape detecting the approach of a moving object of such dimensions. Had the driver looked, he would have seen; had he listened, he would have heard. If it be assumed that the driver started across the tracks immediately upon the clearing of the intersection by the last car of the northbound train, then the conclusion would be

unescapable that he so started without either looking or listening for a south-bound train. As we have stated, the testimony shows that the occupants of the automobile were familiar with the crossing, had been traveling on Forty-sixth Street where it intersects Linden Street, for some months at the same hour of the day, and thus had their attention drawn to the fact of the frequency of passing trains during the early morning hours of every day. With these facts before the jury we do not very well see how any other conclusion could be reached than that the deceased was intent upon reaching his place of business as quickly as possible, and was thus led to disregard all reasonable precautions for his own safety, and like many other automobile drivers attempting to cross in front of trains, took the fatal chance.

It not being reasonably probable that any other verdict would have been reached in this case, we cannot say, under the provisions of section 475 of the Code of Civil Procedure and section 4½ of article VI of the constitution, that prejudicial error in the admission of testimony was committed by the trial court. If it be assumed that the jury should have accepted the theory of the appellant that the plaintiff's train was traveling in excess of 22 miles per hour, and therefore at an unlawful rate of speed, it would not in any manner lessen the force of the testimony and the cir- cumstances showing that the occupants of the "Jewett" automobile failed to observe the "Stop, Look and Listen" doctrine, or to take reasonable precautions to ascertain whether it was then and there safe to cross the westerly set of double track lines upon which the defendant was then operating its Berkeley trains.

By reason of the alleged error in the admission of the statement referred to, we have taken the pains to read all the testimony set forth in the transcript, but have copied herein only such portions as we have considered necessary to show the necessity for the conclusion at which we have arrived.

The judgment is affirmed.

Hart, Acting P. J., and Jamison, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 29, 1928.