[Civ. No. 13936. Second Dist., Div. Three. Dec. 10, 1943.]

HAROLD L. HAWKINSON, Respondent, v. JOHN OES-
DEAN, Appellant.

Paul Nourse for Appellant.

William K. Young for Respondent.

WOOD (Parker), J.—Defendant appeals from the order granting plaintiff's motion for a new trial. The motion was granted upon the sole ground "that the verdict is against the law."

The action was for damages for personal injuries sustained

by plaintiff, a pedestrian, when he was struck by an automobile operated by defendant. The accident occurred about 9:55 p. m. on December 18, 1941, in the proximity of the intersection of Hollywood and Cahuenga Boulevards. Hollywood Boulevard extends east and west, and Cahuenga Boulevard extends north and south. The traffic at that intersection was controlled by mechanical colored light signals. Defendant, who was driving an automobile south on Cahuenga Boulevard, stopped at the north entrance to the intersection of Cahuenga and Hollywood Boulevards, as required by the red light signal. When the light signal changed to green, defendant made a right turn, in a westerly direction, onto Hollywood Boulevard and collided with plaintiff who was crossing Hollywood Boulevard in a southerly direction. A marked pedestrian crosswalk was on the west side of the intersection. There was a conflict in the evidence as to whether plaintiff was within the marked pedestrian crosswalk.

Plaintiff testified that he was within the pedestrian crosswalk; that before stepping from the curb into the crosswalk, he had first looked over his left shoulder to ascertain whether any vehicles coming south on Cahuenga were going to make a right-hand turn; that he saw none and stepped from the curb about the center of the crosswalk; that he proceeded at his "usual gait" to a point about 7 feet "north of the northerly (streetcar) track," when he again looked to see whether any traffic "coming from the south on Cahuenga" was going to make a right-hand turn; that he saw none and proceeded about 2 feet more when he "happened to look across" his left shoulder and saw a car turning which struck him; that he was on his way to a curio store on the south side of Hollywood Boulevard about one and one-half blocks west of Cahuenga; and that he was "quite close" to the western boundary of the crosswalk when he was struck. He further testified that he was wearing a "powder blue" suit and a gray overcoat at the time he was struck; and that there were not "many pedestrians or much traffic crossing" at the time of the accident.

Defendant testified that he did not see plaintiff until the impact; that there was no one coming from either direction in the "pedestrian zone" when he made the right turn; that he struck plaintiff at a place on the pavement between 20 and 30 feet west of the pedestrian crosswalk; that plaintiff was wearing a dark coat, but he "wouldn't say it was or was not"

the one placed in evidence by plaintiff; and that he was interviewed at his home in Detroit, Michigan, regarding the accident by two men and, during the interview, one of them wrote in a book, but he (defendant) did not make the statement that plaintiff was cutting across the crosswalk or say anything about a crosswalk.

A deposition of one of the two men who interviewed defendant was read into evidence. It stated that deponent was a court reporter by profession; that he wrote said conversation verbatim in shorthand; that defendant, in describing plaintiff's position at the time of the accident, made the following statements: "Well, he cut across the crosswalk there, see, and he didn't cross at the corner, I can't say where he come from though because I was coming down the street and there he was and I don't know where he come from," and "No, I don't know where he come from because I did not see him until I hit him"; and that defendant stated he (defendant) was going west on Hollywood Boulevard after making a right-hand turn from Cahuenga and "he would say" that he hit plaintiff about two car lengths west of the crosswalk, but he didn't know what "the witness" would say because it all happened so fast that he didn't know where the plaintiff came from.

The deposition of a witness to the accident, who had since moved to Oregon, was read into evidence. The witness stated that she and her sister were walking east on the north sidewalk of Hollywood Boulevard, west of Cahuenga Boulevard, on the night of the accident; that she saw plaintiff "hurrying," with "more of a running step," between two cars parked at the north side of Hollywood Boulevard; that plaintiff "just stepped, kind of slipped between the 2 cars and ducked out in front of the other"; that he was wearing dark clothing—as she "recalled," it was a sweater and slacks; that he was not going straight across the street but was proceeding at a slant in a southwesterly direction; that "he slightly ran," and "as he stepped from the curb he leaped from the curb"; that she did not see plaintiff until he stepped off the curb; that when she first saw him he was "coming between two cars" not more than 20 feet from the corner; that she believed she observed the pedestrian continuously from the time she first saw him until he was struck; that she saw defendant turn the corner very slowly, approximately 12 to 15

miles per hour, and he did not increase his speed; that he stopped immediately after the impact; that she could see plaintiff was "going to be hit" so she went to the curb; and that she made statements to two police officers on the night of the accident, but she did not think she told them she did not see the pedestrian before the collision because she did see him before the accident occurred.

A policeman, who was patrolling Hollywood Boulevard, testified that he arrived at the scene a "few minutes" after the accident; that plaintiff was lying on the pavement and his feet were pointed in a southwesterly direction and his head was approximately 12 to 15 feet from the westerly portion of the crosswalk; that cars were parked along the north curb of Hollywood Boulevard, west of Cahuenga; that traffic was "heavy" that night; that he talked with the witness (who later moved to Oregon) and her sister, who gave their names as witnesses to the accident; and that the witness stated she saw plaintiff walk between the second and third cars parked at the north curb of Hollywood Boulevard, and that she heard but did not see the impact.

Two police officers, who investigated the accident, testified that cars were parked along the north curb of Hollywood Boulevard west of Cahuenga when they arrived at the scene, about five minutes after the collision.

The jury returned its verdict in favor of the defendant, and a judgment was entered in accordance therewith.

Defendant contends that the verdict is not against law, and that the trial court erred in granting the motion for a new trial upon that ground. Plaintiff maintains that the verdict is against law because, as he asserts, the evidence is insufficient to justify the verdict. There are several reasons why plaintiff's position cannot be sustained. ■ A verdict is against law when it is contrary to the instructions given the jury. No conflict is claimed or appears between the verdict and the instructions. A verdict is not against law merely because the evidence is insufficient to justify it. That a verdict is against law or that it is not justified by the evidence are separate grounds for a new trial. ■ An order granting a new trial on the ground that the verdict is against law cannot be sustained by merely showing that it is unsupported by the evidence. (*Brumagim* v. *Bradshaw* (1870), 39 Cal. 24, 35.) ■ It is possible to determine whether a verdict is contrary to an instruction only when the evidence on a point

covered by the instruction is without conflict and fails to show a set of facts which, under the instruction, would warrant the verdict reached. ■ Where the evidence on that point is conflicting, but sufficient to support a finding of fact which, under the instruction, warrants the verdict, it must be presumed that the jury did make such a finding, and hence its verdict is not contrary to the instruction and not against law. (*Declez* v. *Save* (1887), 71 Cal. 552, 554 [12 P. 722]; *Northern Ry. Co.* v. *Jordan* (1890), 87 Cal. 23, 28 [25 P. 273].)

As an additional reason for holding plaintiff's argument to be untenable, it will be noted that the record shows, as indicated by references herein, that the evidence was legally sufficient to justify the verdict.

■ Another reason plaintiff's position cannot be sustained is that plaintiff's motion for a new trial did not set forth insufficiency of the evidence as a ground therefor. The order granting the new trial did not specify that it was granted upon the ground that the evidence was insufficient to sustain the verdict; therefore, it will be conclusively presumed that the order was not based upon that ground. (Code Civ. Proc., sec. 657, as amended 1939; *Dempsey* v. *Market Street Ry. Co.* (1943), 23 Cal.2d 110 [142 P.2d 929]; *Lewis* v. *Southern California Edison Co.* (1931), 116 Cal.App. 44, 49 [2 P.2d 419].) Sufficiency of the evidence is not an issue on this appeal.

■ Another ground set forth in plaintiff's motion for a new trial, and urged upon appeal, is error in law occurring at the trial and excepted to by plaintiff. The fact that the court granted the motion for a new trial upon the one ground, "that the verdict is against the law," does not preclude an examination of other grounds set forth in the motion for a new trial in this case which, as above stated, did not include insufficiency of the evidence. (*Weddle* v. *Loges* (1942), 52 Cal. App.2d 115, 120 [125 P.2d 914]; *C. Lomori & Son* v. *Globe Laboratories* (1939), 35 Cal.App.2d 248, 251 [95 P.2d 173]; *Reilley* v. *McIntire* (1938), 29 Cal.App.2d 559, 562 [85 P.2d 169]; *Weisser* v. *Southern Pacific Ry. Co.* (1906), 148 Cal. 426, 428 [83 P. 439, 7 Ann.Cas. 636].) It was stated in *Gray* v. *Robinson* (1939), 33 Cal.App.2d 177, at page 180 [91 P.2d 194]: "The reasons given by a trial judge in support of an order which sets forth the ground or grounds on which the motion is granted are no concern of this court where adequate grounds

are specified in the motion and established by uncontradicted affidavits, and particularly so where the court has failed to specifically exclude in the order for a new trial those specified grounds''; and it was stated further therein, on page 181, in quoting from *Kauffman* v. *Maier*, (1892), 94 Cal. 269, 276 [29 P. 481, 18 L.R.A. 124] : '' 'If there be any grounds upon which its action can be upheld, the order will be sustained, irrespective of the particular ground given by that court, whether in an opinion or by a statement in the order itself.' ''

Plaintiff asserts that the alleged error in law occurring at the trial occurred by reason of the following: Plaintiff on rebuttal, called the two investigating police officers and, referring to the officers' written report of the accident, asked each to state whether or not Betty Hulse (the witness) stated to them at the scene of the accident and in the presence of each other ''that she didn't see the pedestrian before the collision.'' Each officer answered in the affirmative. On cross-examination, over the objection of plaintiff, the officers were allowed to testify as to further statements, shown in the same written report as allegedly having been made to them by Betty Hulse during the same conversation.' On such cross-examination one of the officers testified as follows: that Betty Hulse in substance made the statements ''that she didn't see the pedestrian before the collision, but saw party number one [defendant] from the corner with the signal, driving west about 15 miles per hour and going about a car length and a half west of the crosswalk where he struck the pedestrian crossing south across Hollywood Boulevard, from between parked cars; pedestrian was knocked about three feet to the center of the street; the car stopped immediately without skidding''; ''that she believed the pedestrian was at fault,'' and that ''she looked back as he [the pedestrian] came from in between the parked cars and walked into the street and was struck.'' The other officer testified as follows: that Betty Hulse stated, ''she didn't see the pedestrian prior to the collision and that she looked back just as the collision happened,'' and ''that the pedestrian had walked between parked cars.'' Plaintiff contends the foregoing testimony, elicited from the officers by defendant, did not relate to or explain the testimony of the officers given on direct examination, but related to matters in addition thereto, and that it was improper cross-examination. Section 1854 of the Code of Civil Procedure provides: ''When part of an [a] . . . conversation . . . is given in evidence by one party, the whole on the same subject

may be inquired into by the other; . . . when a detached . . . conversation . . . is given in evidence, any other . . . conversation . . . which is necessary to make it understood, may also be given in evidence.'' Section 2048 of said code provides: ''The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith . . . '' Plaintiff's objection, on the ground it was not proper cross-examination, went to the whole of the offered testimony, and no specification was made as to any particular in which it was not proper. If evidence offered is admissible for any purpose, a general objection should be overruled. (10 Cal.Jur. sec. 111, p. 822; *Estate of De-Laveaga* (1913), 165 Cal. 607, 635 [133 P. 307].) Plaintiff opened the subject of the conversation by offering a portion of it for impeachment purposes, and defendant was entitled to show any additional statements which would qualify or explain the portion presented by plaintiff. (*Ashley* v. *Rivera* (1934), 220 Cal. 75, 79 [29 P.2d 199]; *Hatfield* v. *Levy Brothers* (1941), 18 Cal.2d 798, 812 [117 P.2d 841].) Unless the whole of the conversation on the same subject is received, the true meaning and import of the part which is proper evidence cannot be ascertained. It does not follow that all the parts of a conversation are to be regarded as proper cross-examination. If, incidental to receiving pertinent and material portions of a conversation, some immaterial matter is included, the error is harmless unless it is reasonably probable that a different verdict would have been reached if the immaterial matter had not been included. (Code Civ. Proc., sec. 475.) It is not reasonable to believe that any of the testimony, which might be considered as unrelated to the testimony elicited on direct examination in the instant case, would have materially affected the result. Most of the same statements made on such cross-examination were in the witness' deposition, which had been read into the record, and were before the jury, that is: that the witness saw defendant turn the corner very slowly, approximately 15 miles per hour, he did not increase his speed, and he stopped immediately after the impact. Such cross-examination did include, however, a statement which was not before the jury for its consideration, as a result of reading the deposition, since such statement was ordered stricken out after it was read. That statement was that the witness thought the pedestrian was at fault. In view of the whole of such cross-examination which included statements of alleged facts indicating that

plaintiff was at fault, the fact that such cross-examination also included witness' opinion that plaintiff was at fault was not prejudicial error. In the case of *Meredith* v. *Key System Transit Co.* (1928), 91 Cal.App. 448 [267 P. 164], the court held that section 1854 of the Code of Civil Procedure did not justify the admission in evidence of a statement made by a witness to the defendant shortly after the collision. The court, asserting that the statement was hearsay and the opinion of the witness, held it was not probable that the result would have been different if such statement had been excluded, and stated at page 459: "It not being reasonably probable that any other verdict would have been reached in this case, we cannot say, under the provisions of section 475 of the Code of Civil Procedure and section 4½ of article VI of the constitution, that prejudicial error in the admission of testimony was committed by the trial court."

Two other grounds for a new trial included in plaintiff's motion were: newly discovered evidence; and surprise and excusable neglect. No affidavits were filed in support thereof and it will not be necessary to consider such grounds. The other ground specified in plaintiff's motion, that the judgment is against law, need not be discussed inasmuch as the statements made herein concerning the ground that the "verdict is against the law" are applicable thereto.

Although the presumption is in favor of the order and against the verdict upon an appeal from an order granting a new trial (*Lucerne Country Club* v. *Beal* (1937), 21 Cal.App. 2d 121, 124 [68 P.2d 408]), an examination of the record herein shows that the order granting the motion for a new trial cannot be sustained.

The order granting the motion for a new trial is reversed.

Shinn, Acting P. J., and Shaw, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 7, 1944.