[Civ. No. 12742. First Dist., Div. One. Jan. 2, 1945.]

ALFRED KENNETH SCOTT et al., Respondents, v. GEORGE RENZ et al., Appellants.

430

Bronson, Bronson & McKinnon for Appellants.

James S. Byers, James F. Boccardo and Edwin H. Williams for Respondents.

PETERS, P. J.—This action was brought by plaintiffs to recover damages for the death of their infant child, aged three years and eight months, it being alleged that the death was caused by the negligence of defendants. ■ After a jury verdict for defendants, the plaintiffs moved for a new trial on all of the statutory grounds. The motion was granted without specifying insufficiency of the evidence. It must be assumed, therefore, that the motion was not granted on that ground. (Code Civ. Proc., § 657.) From the order granting the motion defendants appeal.

■ Appellants vigorously urge that, where a trial court has granted a motion for a new trial on the ground of errors in law, the burden of sustaining the order is upon respondents. Appellants claim to find support for this contention in *Phillips*

v. *Wheeler*, 55 Cal.App. 236 [203 P. 413] (no hearing asked in the Supreme Court), the only authority cited to support this somewhat startling suggestion. In that case neither the appellant nor the respondent discussed in their briefs the only possible grounds justifying the order granting the new trial. In setting aside the submission and ordering that further briefs be filed, the court, *per curiam*, stated that, since on the record before it only the grounds that the verdict was against the law and that errors in law occurred at the trial could be properly considered, ''it would seem that the duty of pointing out wherein the verdict is against law or that errors were committed during the trial is upon the respondents.'' The reason assigned for this suggestion was that on the motion for a new trial in the trial court the burden is on the moving party to point out the errors claimed ''in which case the record on appeal would presumably be as it was made below and thus the appellate court advised of the particular errors assigned as justifying the granting of the motion and the affirmance of the order.'' If this language should be construed to mean that the burden in such cases is on the respondent to sustain the order, it is contrary to all the other cases on the subject. ■ On all motions the burden is on the moving party in the trial court, but, if the motion is granted, the burden rests on appellant to show error. In the absence of a showing of error the order must be affirmed. (See, generally, cases collected and commented on, 2 Cal.Jur. p. 852, § 499, *et seq.*) ■ Neither the rules nor the statutes provide for any different rule on appeals from orders granting new trials than apply to appeals generally. It is not the function of an appellate court to legislate by providing that a different rule should apply to such appeals. ■ The rule is and should be that the burden is on the appellant to show error, even where to do so the appellant must prove a negative—i. e., that no error in law existed that justified the granting of a new trial. ■ As was said by the Supreme Court in the recent case of *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338]: ''Upon an appeal from an order granting a new trial, all presumptions favor the order as against the verdict,'' citing *Abercrombie* v. *Thomsen*, 59 Cal.App.2d 331 [138 P.2d 701]; *Estate of Wood*, 131 Cal.App. 465 [21 P.2d 626], and *Weaver* v. *Shell Oil Co.*, 129 Cal.App. 232 [18 P.2d 736].

In the present case the minute order granting the new trial does not specify the ground upon which it was granted. The trial judge, however, filed an opinion in which he explained his reasons for granting the motion. In that opinion he stated that he was granting the motion because he believed he had committed error in giving, on his own motion, an instruction when the jury returned to the courtroom and asked for additional information.

Where a motion for a new trial is granted on errors of law, even if the order specifies the ground upon which it is granted, the appellate court is not limited to a consideration of the grounds stated in the order. If there be any grounds upon which the trial court's action can be upheld, the order will be sustained irrespective of the particular ground given by that court, whether in an opinion or by a statement in the order itself. This has been the well settled rule in this state at least since 1892 when *Kauffman* v. *Maier,* 94 Cal. 269 [29 P. 481, 18 L.R.A. 124], was decided. (For several more recent cases where many cases are referred to, see *Gray* v. *Robinson,* 33 Cal.App.2d 177 [91 P.2d 194]; *Schnittger* v. *Rose,* 139 Cal. 656 [73 P. 449]; *Pitt* v. *Southern Pacific Co.,* 121 Cal.App. 228 [9 P.2d 273].)

In the present case the only errors in law alleged to have occurred during the trial are alleged errors in various instructions. Of course, a new trial may be granted upon the ground that the jury was erroneously instructed upon matters of law. (Code Civ. Proc., § 657; *Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165, 170 [153 P.2d 338].) This court has recently set forth the rules applicable to such an appeal in *Conroy* v. *Perez,* 64 Cal.App.2d 217, 220 [148 P.2d 680], as follows: ''The rule governing reviewing courts on appeals of this kind may be stated as follows: 'The granting or denial of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon a manifest and unmistakable abuse. It is especially so when such discretion is used in awarding a new trial which does not finally dispose of the matter.' (2 Cal.Jur. 905; *Pettigrew* v. *O'Donnell,* 32 Cal.App.2d 502 [90 P.2d 93].) And where the subject of erroneous instructions is involved, it is held that a wide discretion should be allowed to the trial court and that the order granting the new trial must not be disturbed unless there appears to be an abuse of discretion. (*Pope* v. *Wenisch,* 109 Cal.App. 608 [293 P. 622], citing

*Thompson* v. *California Const. Co.*, 148 Cal. 35 [82 P. 367] ; *Associated Fruit Co.* v. *Marone*, 68 Cal.App. 358 [229 P. 868] ; and 20 Cal.Jur. 140.)''

The Supreme Court, in the case of *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338], had the following to say concerning the discretion conferred upon the trial courts in such cases: ''It is well settled that the granting of a motion for a new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. [Citing 11 cases.] Upon an appeal from an order granting a new trial, all presumptions favor the order as against the verdict [citing 3 cases] and the order will be affirmed if it may be sustained on any ground [citing 4 cases] although the reviewing court might have ruled differently in the first instance. [Citing 3 cases].''

The basic facts are as follows: The plaintiffs are husband and wife. They are the parents of two children, Donna Mae, nearly eight years old at the time of the accident, and Kenneth, three years and eight months old when killed. The Scott family, in July of 1943, lived in Gilroy on Cohansey Road, a side street that runs generally east and west. The Scott house is set back from Cohansey Road about 170 feet. Leading to the house from Cohansey Road is the narrow one-car private driveway of the Scotts. This driveway is nearly 200 feet long and leads to a turn-around in back of the Scott house, and from there to the garage. Running parallel to Cohansey Road, and back about 130 feet from it, is a privet hedge, about 6 feet high and 2½ feet thick. This hedge runs across the front of the Scott house about 40 feet therefrom. When the hedge approaches the driveway, which runs along the east boundary of the Scott property, it turns at a right angle to the south and runs along the west edge of the driveway for a distance of over 90 feet. This portion of the hedge runs north and south. About 70 feet south from the northerly edge of the hedge there is a three-foot opening leading from the front and side gardens immediately adjacent to the Scott house to the driveway. At its southerly extremity the hedge turns westerly and extends for a short distance in that direction. Because of the hedge, the Scotts have in front and on one side of their house a level garden, partially

enclosed on the north and east and south by the hedge. The children customarily played in this area.

The defendants, George Renz and Harriett Renz, are husband and wife. Defendant Donald Renz is their son who was 16 years of 'age at the time of the accident. He was driving the Renz family car, which is registered in the name of Mrs. Renz, when the Scott child was killed. It was stipulated that at the time of the accident Donald was driving with the consent of his mother, that he was on an errand for his father, and acting within the scope of the errand at the time of the accident, and that Donald's driver's application was verified by both Mr. and Mrs. Renz.

The accident happened about 7:30 p. m. on Friday evening, July 16, 1943. All the witnesses agree that it was a clear summer evening, that the sun was still up, and that visibility was good. For several months prior to the accident Mr. Scott had been employed as a truck driver by Mr. Renz, who was a contractor. Mr. Renz, and his employees, did not customarily work on Saturday. On Friday night, July 16th, Mr. Renz decided that he wanted Mr. Scott to work for him on Saturday, July 17th, if he were free. Mr. Renz had a meeting to attend that Friday night so he sent his son Donald in the family car to call upon Mr. Scott to ascertain if Scott could work the next day. Mrs. Renz decided to accompany her son for the ride. Donald drove the car, a 1938 Buick Sedan, to Cohansey Road. He turned into the Scott driveway at about ten miles per hour and slowed down so that at the time of the accident he was going, according to his testimony, at about three to five miles per hour. Neither Donald nor his mother was familiar with the premises, but they did know that the Scotts had children. Donald drove slowly south on the driveway until he arrived at the hedge. He could not see over or through the hedge. According to his and Mrs. Renz' testimony, just after passing the three-foot opening in the hedge, there was a bump on the right-hand side of the car. They testified that Donald stopped within a distance of ten feet. Upon getting out of the car they discovered Kenneth lying in a pool of blood about five feet south of the south edge of the opening in the hedge, and slightly to the west of the center of the driveway.

Donald and his mother testified that as they proceeded on the driveway Donald was looking straight ahead and was not talking. Donald has 20/20 vision. They both testified that

they did not see or hear any children in the yard or in the driveway until after they felt the bump. Neither saw the opening in the hedge until after the accident. If this evidence were believed by the jury they would have been justified in finding that defendants were not negligent, and that the accident was unavoidable.

But there was substantial evidence, which, if believed by the jury, would have justified a finding that defendants were negligent, and that such negligence proximately caused the accident. Just prior to the accident Kenneth and his sister Donna, together with their seven-year-old cousin Leonard Taylor, who, with his mother Charlotte Taylor, was visiting the Scotts, were playing in the semienclosed yard in front and to the side of the house. They were playing "hide and go seek" and cowboy, using old brooms for "horses." In the house were Mr. and Mrs. Scott and Mrs. Taylor. The latter was sitting by a window overlooking a part of the semienclosed yard. A few minutes before the accident the children came into the house and then returned to the yard. The two older children got tired of playing cowboy and started to turn hand springs. Kenneth was "riding" his broom and ran through the entrance in the hedge onto the driveway. Donna followed him to the gate and observed the Renz automobile in the north end of the driveway. She screamed to Kenneth to come back and he circled around in the driveway south of the gate, still "riding" his broom stick, and was hit by the right front fender of the car. There was considerable evidence that the car did not stop for a distance of sixty feet. The body was found with a crushed skull five feet south of the gate, lying in a pool of blood just west of the center of the narrow driveway. There was substantial evidence that the children standing in the entrance to the hedge were screaming and yelling prior to the accident. There was evidence that a line of blood about twelve feet long led to the place where the body was found and that the ground was disturbed along this area.

It is quite clear from the record that the issues involved were whether the accident was unavoidable or was caused by the negligence of Donald. A verdict for or against the plaintiffs on either of these issues finds ample support in the record. The trial judge submitted not only these two issues to the jury, but, in compliance with the defendants' answer,

instructed on contributory negligence of the parents. After the jury had been out for some time it returned for further instructions. The following then occurred:

"The Foreman: Your Honor, we'd like some more instructions as to regards to whether we have a right to set partial damages if we find the—— if we don't find the defendants guilty, say funeral expenses. The Court: Will you repeat that again? The Foreman: We'd like a little more instructions as to whether we have the right as Jury to award, say funeral expenses in case we didn't find the defendants guilty. The Court: Well, the Court will state to you that the law is that before any damages can be awarded to a plaintiff, you must be satisfied by a preponderance of the evidence that the defendant driver was guilty of negligence, and that his negligence, if any, was the sole proximate cause of the accident and the resulting death. The Foreman: I think that explains it, your Honor."

The jury returned thereafter with an 11 to 1 verdict for defendants.

After granting the motion for a new trial the judge filed an opinion. He first stated therein that the newly discovered evidence set forth by appellants could, with reasonable diligence, have been produced at the trial. He next held that, in his opinion, it was not error to instruct on contributory negligence of the parents. He then referred to the proceedings above referred to and held that the instruction given by him at that time "was a very vital one and one upon which the jury may very well have based its verdict in favor of the defendants. This instruction was plainly erroneous since by it the jury was told that plaintiffs could not recover unless the jury was satisfied by a preponderance of evidence that the defendants' negligence, if any, was the sole proximate cause of the accident. The effect of the instruction was to place upon plaintiffs the burden of proving that they were not guilty of contributory negligence, and of further proving that there was no other proximate cause of the accident, save and except the negligence of the defendants. An instruction that plaintiffs would be entitled to recover if they proved by a preponderance of the evidence that defendants were negligent and that their negligence, if any, was the sole proximate cause of the accident would be a correct statement of law, even though contributory negligence was an issue.

However, the converse thereof would not be a correct statement of the law.

"Substantially the same instruction was given in *Ross* v. *Baldwin*, 44 Cal.App.2d 433 [112 P.2d 666]. There the court held that the giving of the instruction was reversible error.

" 'The law does not require that the negligence of the defendant must be the sole cause of the injury complained of in order to entitle the plaintiff to damages therefor.' (*Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389 [212 P. 913].)

"It is impossible to state upon what basis the jury found in favor of defendants—whether it found that defendants were not negligent, or that plaintiffs were guilty of contributory negligence, or that although defendants were negligent their negligence was not the sole proximate cause of the accident.

"I feel that it is the duty of the court, having given an erroneous instruction, on a vital matter, constituting prejudicial error, to grant a motion for a new trial."

There can be no doubt but that the instruction given by the court states an incorrect principle of law. (*Ross* v. *Baldwin*, 44 Cal.App.2d 433 [112 P.2d 666].) This, appellants admit, but they contend that when related to the facts of this case the instruction was correct. They admit that abstractly the defendant's negligence in some cases need only be *"a"* proximate cause of the injury, and that it does not have to be *"the"* proximate cause. Thus the negligence of a defendant may concur with the negligence of one or more other persons or with an act of God, and yet the defendant is liable whether or not these other persons are made parties to the action. ■ But, say the appellants, in the present case the instruction was correct because here the only issues before the jury dealt with the negligence of defendants and the contributory negligence of plaintiffs, and therefore, for defendants' negligence, if any, to justify an award it would have to be "the sole" proximate cause of the accident. Appellants also point out that the foreman of the jury merely asked if the jury found the defendants "not guilty" could partial damages be awarded. Appellants contend that the challenged instruction must conclusively be presumed to have been given as an answer to that question,

Neither of these contentions is sound. Aside from the fact that the challenged instruction can be interpreted to place the burden of proof to disprove contributory negligence on the plaintiffs, it also can be interpreted to mean that if Kenneth's "negligence" contributed to the accident plaintiffs cannot recover. It is true that the trial court when giving its regular instructions, told the jury that there was no contention that Kenneth was negligent and that "therefore you will not have to consider whether the child was or was not careless or negligent." The court refused to give the more specific instruction on this subject proposed by appellants. But when the court told the jury that they could only find for the plaintiffs if the negligence of the defendants was "the sole" proximate cause of the accident, such instruction may well have confused the jury. The actions of the deceased child obviously contributed to the accident. Although they had been told that they did not have to consider whether the child was negligent, the last instruction may well have been considered to be a qualification of the first instruction. Moreover, there was another actor in this transaction—Donna, the eight-year-old sister of Kenneth. Appellants' counsel asked this witness several questions implying she was careless in not getting her brother off the driveway. The jury may well have interpreted the instruction to mean that if the acts of either Kenneth or Donna contributed to the accident the defendants were not liable. Certainly, the trial court was in a much better position than this court to determine whether the incorrect instruction was prejudicial. What was said in *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 170 [153 P.2d 338], is equally applicable here: "But much is committed to the discretion of the trial judge in determining a motion for a new trial which is made upon the ground of asserted error in instructions. . . . She was in a position to determine far more accurately than an appellate court the effect of a particular instruction upon the jury and in view of the conflicting testimony concerning the happening of the accident, her conclusion that Finkelstein was prejudiced by the charge complained of rests upon sound grounds. Certainly there is no showing whatever of any abuse of discretion."

 The contention that the foreman merely asked if partial damages could be awarded and that the trial court's

answer conclusively must be interpreted so as to limit it to answering that question, needs but little comment. It is obvious that the trial judge did not limit himself to answering the question asked, but went beyond the specific question. The judge who gave the instruction so interpreted his answer, and certainly no one knows better than he what he intended, and what effect the instruction had on the jury.

There is another error in law that appears in the record. The defendants pleaded contributory negligence on the part of the parents, and the trial court instructed on this defense. Under the evidence there was no justification for such an instruction. Parents certainly cannot be subject to the charge of contributory negligence simply because they allow an eight and a three-year-old child to play in their own yard adjoining their private driveway without immediate parental supervision, in the absence of some evidence that automobiles were reasonably expected that night. If a jury could find contributory negligence under such circumstances parents would be subjected to an unreasonable duty of care. Of course, parents are chargeable with ordinary care in the protection of their minor children. (*Healy* v. *Market Street Ry. Co.*, 41 Cal.App.2d 733 [107 P.2d 488]; *Zarzana* v. *Neve Drug Co.*, 180 Cal. 32 [179 P. 203, 15 A.L.R. 401]; *Springer* v. *Sodestrom*, 54 Cal.App.2d 704 [129 P.2d 499].) These cases establish the rule to be that where parents allow their children to play, unattended or not properly supervised, in areas where automobiles or other vehicles reasonably can be anticipated, it becomes a question of fact as to whether they have exercised reasonable care, and the jury should be so instructed. But where, under the evidence, no reasonable mind could find that further supervision was required, then, of course, it is error to instruct on contributory negligence. Under the facts disclosed by the present record, as a matter of law contributory negligence of the parents was not an issue. Here there were three adults within the house, one, the aunt of the Scott children, sitting near a window overlooking part of the yard where the children were playing. The house was located in a suburban area. There is no evidence at all that the Scotts had any reason to believe that an automobile was going to use the driveway that night. Their children were playing in their own yard adjoining the driveway. Certainly the parents could allow their children to play

there without being subject to the charge that by so doing they were guilty of contributory negligence.

Appellants contend that *Springer* v. *Sodestrom*, 54 Cal. App.2d 704 [129 P.2d 499], and *Cambou* v. *Marty*, 98 Cal. App. 598 [277 P. 365], establish the rule that in all such cases it is a question of fact as to whether due care has been exercised. These cases establish no such principle. In the Springer case the nurse in charge of the small child allowed it to play along the curb of a busy street. There was evidence, emphasized by the court, that the nurse brought the child out to that place. Obviously, under such circumstances, the question as to whether the nurse exercised reasonable care was one of fact for the jury. In the Cambou case the child was eighteen months old. After the defendant had driven his car to the residence of the plaintiffs, and, after the parents knew the defendant intended to drive out the driveway in a short time, they allowed their eighteen-month-old child to play in the driveway. Obviously, whether the parents there exercised reasonable care was a question of fact for the jury, and the court so held.

Inasmuch as this cause must be retried, it should be mentioned that the facts have been discussed in this opinion only in connection with the assignments of error in law made by the parties to this appeal. Such discussion must not be taken as constituting any expression of opinion by this court as to the merits of this case.

The order is affirmed.

Knight, J., and Ward, J., concurred.