*903
 
 MAIN, J.
 

 This is an appeal by plaintiff Annin from an order of the municipal court granting to defendants a new trial after judgment in the municipal court for the plaintiff. The defendant-respondent did not take a cross-appeal from the judgment as permitted by rule 3(a) (2) of the Buies on Appeal from Municipal Courts in Civil Cases.
 

 The plaintiff’s cause of action as disclosed by his complaint was to recover a payment in the sum of $571.41 made by him to the defendant Belridge Oil Employees Federal Credit Union by mistake, in the belief that he had signed a note payable to the credit union, whereas in truth and fact the purported signature was a forgery, as plaintiff discovered only after making the payment.
 

 Judge Stewart Magee of the municipal court sitting without a jury heard the evidence on August 5, 1952, and gave judgment for the plaintiff on December 4, 1952. Thereafter defendants moved for a new trial, which motion was heard and granted on February 13, 1953. However on December 31, 1952, Judge Magee, the trial judge, went out of office. The new trial was granted by his successor, Judge Doyle Miller, who had not heard the evidence at the trial. Furthermore he had before him at the time of his ruling no transcript of the evidence, no stipulated statement of facts, and no findings. Findings had been waived by failure to request them at the trial. (Code Civ. Proc., § 632.) He did have before him the pleadings, the judgment in favor of plaintiff and the exhibits introduced in evidence.
 

 In determining whether the appeal can properly be entertained, the appellate court must first take note of the deficiencies in the record on appeal. The record contains neither reporter’s transcript, stipulated statement of facts, findings, nor stipulated or settled statement on appeal. However where the record does contain the judgment roll, the law permits the submission and decision of an appeal on that alone
 
 (Schein
 
 v.
 
 Holbrook,
 
 111 Cal.App.2d Supp. 972 [245 P.2d 708]). Such procedure is also contemplated by subdivision (f) of rule 5 of the Buies on Appeal. Since the clerk’s transcript sent up to this court includes the complaint, demurrer, answer, amended answer and counterclaim, judgment, and order granting new trial, this court has concluded that it may proceed to determine the appeal.
 

 Defendant’s motion for a new trial specified as grounds:
 

 1. Insufficiency of the evidence to justify the verdict.
 

 2. That the judgment is against the law.
 

 
 *904
 
 3. Errors in law occurring at the trial and excepted to by the defendants.
 

 The order granting the new trial specified only one of these grounds, “that decision of said trial is against law.”’ The other two grounds were not specifically excluded in the order; and therefore the order must be sustained if any ground relied on in the motion was established
 
 (Scott
 
 v.
 
 Renz
 
 (1945), 67 Cal.App.2d 428 [154 P.2d 738]), even though the reviewing court might have ruled differently in the first instance.
 
 (Barr
 
 v.
 
 Mountjoy
 
 (1942), 50 Cal.App.2d 40, 43 [122 P.2d 676].)
 

 However where the order does not specify insufficiency of the evidence as the ground, it is conclusively presumed that the order was
 
 not
 
 based on that ground. (Code Civ. Proe., § 657.) The order here did not so specify and the ground cannot be considered.
 

 The third ground relied on in the motion was “Errors in Law occurring at the trial and excepted to by the defendants.” The municipal judge who granted the motion had not heard the evidence given at the trial. He had before him no record of any rulings by the trial judge on evidence or motions nor any indication that any exceptions were taken. So far as appears, all documents offered in evidence were admitted and none were excluded. The record before the appellate court is likewise devoid of any support for an order granting a new trial for errors in law, since this court has before it no trial record of any description. The ruling judge could not grant the motion on this ground, and of course did not purport to do so.
 

 As a possible ground for sustaining the order appealed from, there remains the ground specified in the order, that “the judgment is against law.” In reviewing the correctness of such an order it is necessary to remember that “the burden rests on the appellant to show error. In the absence of a showing of error the order must be affirmed . . . the rule is and should be that the burden is on the appellant to show error, even where to do so the appellant must prove a negative—i.e., that no error in law existed that justified the granting of a new trial.”
 
 (Scott
 
 v.
 
 Renz,
 
 67 Cal.App.2d 428, 431 [154 P.2d 738].)
 

 In the appellate court the presumption is against the verdict (decision) and in favor of the ruling, unless the record reveals no possible justification for the ruling.
 
 (Scott
 
 v.
 
 Renz
 
 and
 
 Barr
 
 v.
 
 Mount joy, supra.
 
 These and many other
 
 *905
 
 cases asserting this proposition are cases where new trial was granted for insufficiency of the evidence. But the rule is likewise in such cases that before the granting of a new trial can be affirmed, there must exist a substantial conflict in the evidence justifying the exercise of some discretion by the trial judge.
 
 (Pacific Tel. & Tel. Co.
 
 v.
 
 Wellman,
 
 98 Cal. App.2d 151, 157 [219 P.2d 506].) As was said in
 
 Moss
 
 v.
 
 Stubbs,
 
 111 Cal.App. 359, 363 [295 P. 572, 296 P. 86] “ [W]here there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained.”
 

 An exception to the rule declaring a presumption in favor of an order granting a new trial where the question presented is purely one of law, was declared by the Supreme Court in
 
 Santa Marina
 
 v.
 
 Connolly,
 
 79 Cal. 517, 521 [21 P. 1093]. There no controversy existed as to the material facts, the sole question being whether the transactions between the parties as a matter of law amounted to a fraud on the respondents or not. The trial judge concluded (p. 523) that the findings of fact were not sustained by the evidence in some particulars which seemed to the Supreme Court wholly immaterial. The order granting a new trial was therefore reversed. The court said:
 

 “Taking this view of the transaction, we are clear that the court below was right in its first conclusion, and that it was error to grant a new trial.
 

 “We do not overlook the rule that on an appeal from an order granting a new trial every intendment is in favor of the order of the court, but where the question presented is purely one of law, and this court is satisfied that an error has been committed, the rule is not applicable.”
 

 In the Santa Marina ease the new trial was granted for insufficiency of the evidence and, so far as the opinion discloses, on no other specified ground, such as that the decision was “against law.” Nevertheless the case is clear authority for the proposition that if only one result is legally possible on all the facts, and the trial court by granting a new trial refuses to reach that result, his order will be reversed.
 

 The determination of this appeal therefore requires an examination of the record to determine the facts presented to Judge Miller at the time of his ruling, in order to ascer
 
 *906
 
 tain whether on such facts the granting of a judgment for plaintiff by Judge Magee was “against law.”
 

 These facts are determinable only from the pleadings, exhibits and judgment for the plaintiff, since the record before Judge Miller contained nothing else. Findings were waived, no trial record of any sort existed, and the judge had not heard the evidence.
 

 Where findings are waived, it will be assumed that the trial court found every fact essential to the support of the judgment, and findings will be implied in favor of the successful litigant upon all of the issues raised by the pleadings.
 
 Snyder
 
 v.
 
 Snyder
 
 (1951), 102 Cal.App.2d 489 [227 P.2d 847];
 
 Childers
 
 v.
 
 Childers
 
 (1946), 74 Cal.App.2d 56 [168 P.2d 218].
 

 The judgment not only establishes plaintiff’s cause of action, but refutes. the denials and affirmative defenses of the answer. The material facts alleged in the complaint are to be taken as true, and any at variance with them alleged in the answer as untrue.
 

 In the present instance, however, Judge Miller also had before him as a part of the trial evidence several documentary exhibits, the substance of which is set forth in the proper sequence for whatever comfort they may afford respondent, along with the allegations of the complaint, in the following reconstructed statement of facts:
 

 On or about August 14, 1950, one C. J. Green, in order to obtain a loan from defendant credit union, obtained plaintiff’s signature on a printed “Application for Loan” form (Exhibit 1). Two days later Green obtained the loan. He executed and delivered to defendant at its office in Kern County, California, a promissory note (Exhibit H) on which appeared the signature of Green and the handwritten words “Clarence R. Annin” in a space on the face of the note captioned “Signature of Maker and Comaker.”
 

 The purported signature of plaintiff Clarence R. Annin was a forgery; he did not execute the note as comaker for Green nor at all.
 

 On December 22, 1950, a memorandum was sent from defendant union to plaintiff enclosing a copy of a notice sent to Green at Babbitt, Nevada, showing a balance due on the loan of $743.41. The memorandum states that the last payment was received October 25, 1950, and “as co-signer on the loan it is to your interest that some action be taken immediately.
 
 *907
 
 Perhaps you can contact Mr. Green and find out what arrangements he proposes to make in regard to payments.”
 

 On December 28, 1950, plaintiff, thinking he had cosigned the promissory note with Green, stated in a letter to defendant union that if Green did not pay, he, Annin, would do so. This letter (Exhibit B) is set out in full, as respondent places its principal reliance thereon:
 

 “Clarence R. An'nin
 

 Route 1, Box 215
 

 Wasco, California
 

 12-28-50
 

 “Belridge Oil Emp-Fed., Or. Un.
 

 Att—E. D. Press Tres.
 

 “Sirs—
 

 Please note my correct address. Tour letter was sent to a Wasco city address. I live in the country.
 

 Thanks for the information about Carl J. Green.
 

 I am working with the local Chief of police and Judge in order to keep from getting hurt stuck too hard.
 

 I hope this deal may be paid up without anyone being hurt, but in any event I co-signed with Green and you people may count on your full payment, from me, if not from Green. Any additional information about his activities would be appreciated.
 

 Sincerely,
 

 Clarence R. Annin.”
 

 On January 15, 1951, a letter (Exhibit 2) from the union to Annin acknowledged receipt of Exhibit B, stated the loan balance, and that no response had been received from Green to the notice of December 22, 1950. (Exhibit A.)
 

 On January 22, 1951, defendant union notified plaintiff Annin that it had received a payment of $225 from Green. “This substantial amount takes care of payments to date and several in advance.” (Exhibit C.)
 

 On June 21, 1951, a form notice'Was sent by the union to Green at Hawthorne, Nevada, stating “your account is now past due, may we have your prompt attention to this account,” copy to Annin. (Exhibit 3.)
 

 On July 25, 1951, defendant wrote plaintiff as co-signer on the note with Carl J. Green (Exhibit 4):
 

 “Mr. Green upon leaving employment of Belridge Oil Company in Oct., 1950, had a balance due of $743.41. On
 
 *908
 
 January 25, 1951, he made a payment of $209.40 oh his note which was then paid up to April, 1951, leaving a balance of $534.01. Repeated efforts to secure payment on note, now 3 months’ delinquent have failed
 
 an
 
 as co-signer we would appreciate your making payments for months of May, June & July in the amount of $35.00 for each month.”
 

 On November 16, 1951, the union wrote plaintiff “as we have not received any answer from Mr. Green . . . , I have been again requested to ask that payments be made by you as co-signer in accordance with note.” (Exhibit D.)
 

 On November 27, 1951, plaintiff paid the balance due upon said note (Exhibits E and F), and about December 2, 1951, received a letter from defendant (Exhibit G) enclosing the promissory note. Upon its recéipt plaintiff discovered that the signature purporting to be his was a forgery, and that he had not signed said note as he had been led to believe by the defendants. Thereupon he notified defendant that he had not co-signed the note and that the signature purported to be his was a forgery and demanded repayment by defendants of $571.41. Defendant refused to pay, and the judgment was for plaintiff in the amount of $571.41 plus interest and costs.
 

 The first defense in the amended answer denies certain allegations of the complaint, which denials were disposed of by the judgment for plaintiff.
 

 The second and separate defense recites the history of the transaction on the assumption that plaintiff’s signature on the note was genuine; alleges that defendant union, in consideration of plaintiff’s letter of December 28, 1950, “did not accelerate the payment of the principal of said note and did not attempt further enforcement of its right under said note”; that certain payments on the note were thereafter made (referring to those made by Green), but that the note again became delinquent on May 25, 1951; that defendant then elected to declare the entire balance of $534.01 due and payable, and that plaintiff on November 27, 1951, paid the entire sum with interest.
 

 Based on this recital defendant pleads that plaintiff is estopped from claiming that his signature on the note is forged, and from claiming repayment from defendant; that if the signature was a forgery, plaintiff “duly ratified” the signature as his.
 

 The third defense repeats the narrative allegations of the second, and relies upon the letter of December 28, 1950, as an independent agreement to pay all sums due on the note,
 
 *909
 
 and alleges that the payment by plaintiff was made pursuant to this agreement (rather than upon the note).
 

 The fourth defense, after restating the narrative of the second defense, alleges the execution and delivery of plaintiff’s check (given in payment of the note) in the sum of $571.41 to defendant; “said sum of money which plaintiff seeks to recover in said action is the sum that was received by said defendant by said negotiable instrument” (the check).
 

 The difficulty with these defenses is that they lack evidentiary support in the record. Under the finding implicit in the judgment, the facts are not as defendant alleges them to be, and no support for his contentions is to be had in the exhibits. Judge Miller had before him nothing to indicate any such reliance by defendant on plaintiff’s letter as is alleged. As shown by the correspondence, defendant’s reliance was upon the promissory note and the supposed signature of plaintiff appearing thereon. Defendant’s repeated demand was for payment of
 
 the note.
 
 The reliance on the note was unfortunate, but plaintiff had done nothing to induce it; and there is nothing in the record to indicate any investigation by defendant as to whether the signature was genuine. Respondent is bound by the trial court’s finding that the supposed signature was a forgery. Respondent made the loan and accepted the note four months before the letter of December 28, 1950, was written; and the record shows no change of position by defendant thereafter. The alleged “ratification” was found by the trial court, in accordance with the allegation in the complaint, to have been made by plaintiff without knowledge that he was not already bound to pay the note.
 

 There is no indication except the allegation in the amended answer that either party ever treated the letter or the check given a year later as unrelated to the note. The trial court by its judgmnt found the only legal significance of these documents to depend on the validity of plaintiff’s signature on the note.
 

 In an attempt to demonstrate that the decision was “against law,” respondent argues that “The issue in this case is not the liability of appellant on the note but the liability on plaintiff’s Exhibit B (letter of December 28, 1950) which is a contract in itself and constituted a ratification of any defect in the note. Consideration was given by respondent in forbearance to sue Green and further respondent changed its position by ceasing
 
 *910
 
 all attempts to collect from Green and accepted (from Green) part payment of the principal. This note had an acceleration clause and therefore respondent did not have to reinstate the loan in good standing. The letter of December 28,1950, legally removed all possible question of said note being a forgery. ’ ’
 

 The fallacy of this position is at once apparent. As previously pointed out, the complaint alleges and the trial court by its judgment found that at the time the letter of December 28, 1950, was written by Annin, he was under the mistaken impression that he had in fact signed the note as alleged by defendant. He was still laboring under this mistake of fact at the time he sent his check to pay the balance due on the note. Under sections 1576 and 1577 of the- Civil Code he would be entitled to rescind his undertaking of December 28, 1950, if it was made under a “belief in the present existence of a thing material to the contract, which does not exist.” Plaintiff wrote his letter and paid the demand under the mistaken belief that he had cosigned the note, which in reality he had not. It is impossible to base any liability on such a document as Exhibit B executed under such a mistake of fact. The letter of December 28th is not a new guaranty; by reason of the mistake it is not legally a guaranty at all, since under section 1577 the plaintiff was entitled to rescind it.
 

 No change of position by defendant union is apparent. At the time of plaintiff’s mistaken commitment, defendant had already made its loan to Green and in so doing had accepted the cosignature on the note presented by Green as being in truth and fact the signature of plaintiff Annin. There is no suggestion in the record that defendant made any investigation as to the genuineness of Annin’s signature before advancing the money to Green. The record is devoid of any indication that the union changed its position to its detriment in any way after receiving the payment from Green, or by reason of plaintiff’s letter on December 28, 1950.
 

 Decisions in such cases as
 
 Crumrine
 
 v.
 
 Dizdar,
 
 59 Cal.App.2d
 
 783 [140 P.2d
 
 101], cited by respondent, where the surety was induced by fraud to sign and did actually sign with the principal maker, have no application to our case, where the alleged comaker never signed at all. The instrument in the Crumrine case was valid as between the surety and the payee of the instrument, although fraudulent as between the surety and the principal maker. In the case now on appeal the instrument was void
 
 ab mitio
 
 as to the purported cosigner.
 

 Other propositions of law are advanced by respondent, but
 
 *911
 
 they do not support his attempt to base liability on a void instrument, a nullity.
 

 In addition to the analysis in our foregoing opinion, the decision in
 
 Benfer
 
 v.
 
 Skaggs
 
 (1950), 96 Cal.App.2d 380 [215 P.2d 487], seems to us determinative of this appeal. There plaintiff sued to rescind a contract for purchase of a business on the ground of defendant seller’s fraudulent misrepresentations, and sought to recover the portion of the purchase price paid. The court found in accord with the allegations of the complaint and against the allegations of the cross-complaint, and gave judgment for plaintiffs. The order granting defendant a new trial did not specify any ground, but on plaintiff’s appeal, respondent asserts that the order was based upon the ground that the decision was “against law.”
 

 “The phrase ‘against law’ used in section 657 of the Code of Civil Procedure as one of the causes for granting a new trial is not entirely clear.
 
 (Mosekian
 
 v.
 
 Ginsberg,
 
 122 Cal. App. 774, 776 [10 P.2d 525].) In a general sense a decision is ‘against law’ if there is any valid legal cause whatsoever for a new trial. The statute, however, in authorizing the granting of a new trial on the ground that the decision is ‘against law’ does not include in that phrase all, or any, of the other several distinct and separate causes of the motion which are specified in section 657.
 
 (Brumagin
 
 v.
 
 Bradshaw,
 
 39 Cal. 24, 35.) The statute makes the cause that the decision is ‘against law’ a distinct cause of a motion for a new trial. It is nonetheless a distinct cause because of the circumstance that it is found in the same subdivision of the section as another cause of a motion, the ‘insufficiency of the evidence’ to justify the decision. The two are stated in the disjunctive. They are alternatives. They are objections of an entirely different order. When we say that the evidence is insufficient to justify the decision, we mean that there is an absence of evidence or that the evidence received is lacking in probative force to establish the proposition of fact to which it is addressed.
 
 (Estate of Bainbridge,
 
 169 Cal. 166, 170 [146 P. 427].) ‘An order granting a new trial on the ground that the verdict (decision) is against law cannot be sustained by merely showing that it is unsupported by the evidence. ’
 
 (Hawkinson
 
 v.
 
 Oesdean,
 
 61 Cal.App.2d 712, 716 [143 P.2d 967].)
 

 “ The phrase ‘against law’ refers to a situation furnishing a reason ‘for a re-examination of an issue of fact.’
 
 (Estate of Keating,
 
 162 Cal. 406, 410 [122 P. 1079].) If the
 
 *912
 
 court fails to find on material issues made by the pleadings— issues as to which a finding would have the effect to countervail or destroy the effect of the other findings—and as to which evidence was introduced, the decision is 1 against law.’ In such a case, a reexamination of the facts is necessary in order that the issues of fact may be determined . . . (citing eases) . . . This rule, of course, does not apply where the fact is implied by law, where the fact is immaterial, where the fact is admitted by the pleadings, (or) where the situation is such that it can be said that if the court had found on a material issue it would have been in such a way as to support the judgment. . . .
 

 “If the findings which are made necessarily dispose of the case, the decision is not ‘against law’ because the conclusions of law or the judgment are not supported by the findings . . . (citing cases) . . . Respondent’s argument is that because on the motion for a new trial the court may have drawn different conclusions from the evidence than it drew in its findings, the decision—-the findings of fact (Code Civ. Proc., § 632)—is ‘against law.’ The argument goes solely to the sufficiency of the evidence to justify the decision. Respondent says that the court should have found originally that the alleged misrepresentations were not material and did not induce plaintiffs to make the purchase. This is saying that the findings are contrary to the evidence; that the evidence is lacking in probative force to establish the allegations of the complaint. This is the meaning of ‘insufficiency of the evidence’ to justify the decision as used in section 657 of the Code of Civil Procedure.
 
 (Estate of Bainbridge,
 
 169 Cal. 166, 169-170 [146 P. 427].) Since the order granting a new trial did not specify that it was granted on the ground of the insufficiency of the evidence to sustain the decision, it is conclusively presumed that it was not based on that ground. (Code Civ. Proc., § 657.) ”
 

 In the case now on appeal the findings implied by the judgment dispose of the case. We have not been able to find any error in the determination of any question of fact, nor any ground on which the order can be upheld. The decision of the trial court not having been “against law,” the order granting a new trial must be reversed.
 

 Order reversed.
 

 Lambert, P. J., and Bradshaw, J., concurred.