[Civ. No. 25169. Second Dist., Div. One. Dec. 22, 1961.]

MARY E. WHITE, Plaintiff and Appellant, v. AETNA LIFE INSURANCE COMPANY, Defendant and Appellant.

Richard G. Harris for Plaintiff and Appellant.

William K. Young for Defendant and Appellant.

FOURT, J.—This is an appeal by the plaintiff from an order granting a motion for a new trial "upon the ground of the insufficiency of the evidence to justify or sustain the verdict," and a cross-appeal by the defendant from the judgment in favor of the plaintiff and against the defendant.

The plaintiff was married to Gerald Richard White on October 14, 1955. They permanently separated shortly after

the marriage but were not divorced and were not living together at the time of his death.

Gerald Richard White, sometimes hereinafter referred to as Deceased, had been employed by Douglas Aircraft and by reason of such employment two group policies of insurance were issued to him by the defendant, hereinafter sometimes referred to as Aetna. The policy sued upon was Group Accidental Death and Dismemberment Policy No. LL-56030 in the principal sum of $6,000. It provided in part as follows:

"DESCRIPTION OF CERTAIN TERMS OF THE
GROUP ACCIDENTAL DEATH AND DISMEMBERMENT POLICY
"BENEFITS

"The Employee will be entitled to a benefit determined from the following Table of Benefits immediately upon receipt of due proof

(a) that he has, while insured under the group policy, sustained any of the losses listed in said Table of Benefits; and

(b) *that such loss resulted directly, and independently of all other causes, from bodily injuries (including bodily injuries arising out of or in the course of employment) sustained solely through accidental means*; and

(c) that such loss occurred within ninety days after the date of the accident causing such loss.

". . . . . . . . . . . .

"EXCLUSIONS

"*The Group Accidental Death and Dismemberment insurance does not cover* any loss caused directly or indirectly, wholly or partly, or contributed to substantially, by bodily or mental infirmity; or ptomaines; or bacterial infections (except pyogenic infections which occur through an accidental cut or wound); or any other kind of disease; or medical or surgical treatment (except such as may result directly from surgical operations made necessary solely by injuries covered by the group policy); or war, or any act of war; or *suicide, sane or insane.*" (Emphasis added.)

After the separation of Deceased from the plaintiff he was in the United States Navy. He did not see the plaintiff until after he was discharged from the Navy. Thereafter he visited the plaintiff in Minnesota while he was on a vacation in July 1957, at which time she told him that she was interested in another man (who was at that time unidentified) and was pregnant by him. White left for California in August 1957 and returned to his employment with Douglas Aircraft Com-

pany. White moved into Apartment 1, 228 North Catalina Street, Redondo Beach, with two male roommates, upon arrival in California. On November 14, 1957, he moved into Apartment 6 by himself, in the same apartment house where he had been living. This apartment consisted of one room, a small kitchen about 5 feet by 6 feet in dimensions and a bath. White left for work about 3:30 p.m. on November 14, 1957, after moving into the new apartment. On that date he paid $40 for one month's rent in advance. After work he had something to eat and a beer or so with one of his former roommates who rode to work with him. White drove the car, let the former roommate out about 2 a.m. and stated that he would see him the next day. The former roommate stated that Deceased appeared no more depressed than usual when they parted. White went to his apartment on the second floor of the building. The occupant of the apartment below White heard someone walking around in Apartment 6 from 3 a.m. until about 6 or 7 a.m. Shortly before an explosion (which will be referred to hereinafter) the first-floor occupant heard a thump on the floor of Apartment 6.

The former roommate stated that Deceased was in a happy frame of mind about one-half the time before they started rooming together and that thereafter White was depressed a lot of the time, as if he did not care, and from time to time White had stated in effect that he was disgusted with living and was sick of it all. Shortly after White started to live with his former roommates he received a letter dated October 10, 1957, from plaintiff's attorney, which had enclosed therein a form of release for White to sign. The release form provided in effect that White would release all of his claims against the man who was the father of plaintiff's then unborn child. White cried when he received the letter and the enclosure.

About 7:57 a.m. on November 15, 1957, there was a violent explosion in Apartment 6, which was followed by a fire. When a police officer arrived, almost immediately following the explosion, White was bare from the waist up, was a mass of blisters and very severely burned. When questioned about what had occurred White stated, ''I don't know. I just got up to cook breakfast and bang.''

The apartment house manager was the first person into the apartment after the explosion. Upon opening the door a rolled towel which was on the floor pushed inward and was wedged under the door. There was a very strong odor of gas in the apartment. The bed was disarranged and relocated by the

force of the explosion. Some orange juice on the table and a bottle of vodka approximately half consumed were observed. On the dresser in the main room the letter from plaintiff's attorney and the proposed release with a long handwritten letter or story by White were located. The first nine pages of the writing by White set forth some of his experiences while in the United States Navy in Japan. The last page started with the words, "Have been drinking" and wound up in an illegible scrawl.

The kitchen chair was facing the kitchen stove and was about 10 inches from the open oven door. The four gas jets on top of the kitchen range and the oven gas jets were on. The broiler door and oven door were open. There was no pilot light on the stove and it had to be lighted with a match. A blanket was found either on the top of the kitchen range, the top of the oven door, or on top of the chair. In any event, the blanket was scorched on one side and was of sufficient dimensions to have encompassed or covered a person seated in the chair and the top of the stove. An unlit cigarette was found on the floor and an open book of burned paper matches was found below the kitchen window. White died on November 28, 1957, of the burns he received in the explosion and fire. A certified copy of the death certificate recited the cause of death to be "Probable suicide—gas stove explosion."

Aetna refused to pay the claim which was made by the plaintiff on the insurance policy in question. A complaint was filed by the plaintiff in the matter. The defendant's answer denied that the death resulted from accidental means and alleged that the bodily injuries suffered by decedent were self-inflicted. The case came on to be heard by a jury on June 20, 1960. At the conclusion of the plaintiff's case Aetna made a motion for a nonsuit which was denied, and thereafter made a motion for a directed verdict, which also was denied. The jury returned a verdict for the plaintiff. Aetna made a motion for judgment notwithstanding the verdict, which was denied.

A motion for a new trial was made and granted. The minutes recite: "The motion for new trial is granted on all issues upon the ground of the insufficiency of the evidence to justify or to sustain the verdict."

The appeals now before this court followed.

The appellant asserts that the question involved is "whether the death of White was caused by accidental means and not by suicide."

Appellant claims that there are many possibilities of what occurred on the morning of November 15, 1957. She states in effect that the case was tried upon the theory of one of the possibilities and that the jury agreed with her in such theory, and in effect therefore the judge could not legally grant a motion for a new trial. Admittedly there are several possibilities of what occurred on the day in question other than the possibility apparently selected by the plaintiff and the jury.

The rule of law with reference to an appeal from an order granting a motion for a new trial has been variously stated. In *Yarrow* v. *State,* 53 Cal.2d 427, 434 [348 P.2d 687], it is said:

". . . [1] *All presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance.* (*Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 159 [323 P.2d 391]; *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358-359 [170 P.2d 465].)

 [2] Appellate review is not limited to the ground stated in the lower court's order (*Kauffman* v. *Maier,* 94 Cal. 269, 276 [29 P. 481, 18 L.R.A. 124]; *Lovett* v. *Dintzer,* 131 Cal. App.2d 165, 166 [280 P.2d 58]) with the exception of the ground of insufficiency of the evidence. [3] If the order does not specify that it is granted on this ground, it must be conclusively presumed on appeal that the order was not based thereon. (Code Civ. Proc., § 657.)

 "[4] *In considering the sufficiency of the evidence on the hearing of a motion for new trial it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial.* (*Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 307 [163 P.2d 689]; *Green* v. *Soule,* 145 Cal. 96, 102-103 [78 P. 337]; *Dasso* v. *Bradbury,* 39 Cal.App.2d 712, 717-718 [104 P.2d 128].) [5] *It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground.* (*Richardson* v. *Ham,* 44 Cal.2d 772, 775 [285 P.2d 269]; *Williams* v. *Field Transp. Co.,* 28 Cal.2d 696, 698 [171 P.2d 722]; *Birch* v. *Mahaney,* 137 Cal.App.2d 584, 585-586 [290 P.2d 579]; 3 Witkin, California Procedure, 2062.) [6] *Error is*

*not presumed and the burden is upon the plaintiffs herein to affirmatively show its presence in the record (Power v. Fairbanks, 146 Cal. 611, 614 [80 P. 1075] ; Scott v. Renz, 67 Cal. App.2d 428, 431 [154 P.2d 738]) or a manifest and unmistakable abuse of discretion. (Shaw v. Pacific Greyhound Lines, supra, 50 Cal.2d 153, 159; Crane v. Middleton, 123 Cal. App.2d 517, 522 [267 P.2d 32] ; Brinkerhoff v. Ferguson, 107 Cal.App.2d 175, 176 [236 P.2d 588]; Perry v. Fowler, 102 Cal.App.2d 808, 812 [229 P.2d 46].)''* (Emphasis added.)

In *Lovett v. Dintzer,* 131 Cal.App.2d 165, 166 [280 P.2d 58], it is set forth:

"[1] (1) An order granting a motion for a new trial will be affirmed if it can be sustained upon any ground stated in the notice of intention to move for a new trial. (*Parks v. Dexter,* 100 Cal.App.2d 521, 524 [2] [224 P.2d 121].)

"[2] (2) When a motion for a new trial is granted on errors of law, even if the order specifies the ground upon which it is granted, an appellate court is not limited to a consideration of the ground stated in the order but will consider any ground stated in the notice of intention to move for a new trial. (*Scott v. Renz,* 67 Cal.App.2d 428, 432 [6] [154 P.2d 738] ; *Gray v. Robinson,* 33 Cal.App.2d 177, 180 [1] [91 P.2d 194] ; *Kauffman v. Maier,* 94 Cal. 269, 276 [29 P. 481, 18 L.R.A. 124].)''

█ The burden of proof was on the plaintiff in this case to establish the allegations of her complaint. In *Zuckerman v. Underwriters at Lloyd's, London,* 42 Cal.2d 460, 471-472, 473-474, 476 [267 P.2d 777], it is stated:

"On the question of burden of proof, the beneficiaries maintain that the insurer was required to prove that death resulted from intentional self-injury or disease, inasmuch as they are causes of death excluded by the policies. The position of the insurer was stated to the jury by its instructions placing the burden upon the beneficiaries to establish (1) that death resulted from an accidental bodily injury as defined by the policies, and caused by accident; and (2) that death was not caused 'by intentional self-injury, disease or natural causes.'

"The burden of proof was upon the beneficiaries, they concede, to establish that the death of Francis occurred as a result of a 'bodily injury' within the meaning of that term as defined by the policy. . . . [5] Ordinarily the burden is upon the insurer to prove a true excepted cause or excluded risk in order to defeat liability upon that ground. (*Mattson v. Maryland Casualty Co.,* 100 Cal.App. 96, 98 [279 P. 1045] ;

*Travelers' Ins. Co.* v. *Wilkes, supra,* [76 F.2d 701] p. 705.)

"......................

"[7] Death by suicide reasonably may be said to have been caused by 'intentional self-injury' (*Barber* v. *Industrial Com.*, 241 Wis. 462, 464-465 [6 N.W.2d 199, 143 A.L.R. 1222]), and in an action upon an accident policy which excluded liability for death by suicide, the court pointed out that the contract did not provide for payment for death but for death by accident. 'Suicide, at least when sane, is not accidental death. A plaintiff under this policy has the burden of proving an accidental death, thereby negativing suicide.' . . . [8] By analogy, then, in a suit upon an accident policy, the beneficiary's proof of accident proximately causing death necessarily negatives 'intentional self-injury.'

"......................

". . . The burden of establishing suicide, therefore, should not have been put upon the insurer, as the provision as to death from that cause was not a condition subsequent, but merely definitive of the precise risk assumed.

"......................

"It is not significant that Underwriters pleaded as affirmative defenses that the death of Francis occurred as a result of either intentional self-injury or disease and natural causes."

 The respondent argued at the motion for a new trial that reasonable minds could only conclude that suicide was the sole motive of decedent in conducting himself as he did on the occasion in dispute—that in any event it cannot be held as a matter of law that there is no substantial evidence in the record to support a judgment contrary to the verdict of the jury in this case.

The appellant has set forth in scholarly manner the various views with reference to the interpretation of the words "accidental means" in the policy of insurance and has directed our attention to the various court interpretations of contracts of insurance containing such phraseology. See *Landress* v. *Phoenix etc. Ins. Co.*, 291 U.S. 491 [54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382]; *National Bank of Commerce* v. *New York Life Ins. Co.*, 181 Tenn. 299 [181 S.W.2d 151]. See also 10 Arkansas Law Review and Bar Association Journal 226; 36 Indiana Law Journal 376; 19 Louisiana Law Review 185; 24 Tennessee Law Review 574; 11 Alabama Law Review 358; *Schonberg* v. *New York Life Ins. Co.*, 235 La. 461 [104 So.2d 171].

It was further stated by the appellant that California has adopted the so-called liberal rule. If such be the case it makes little if any difference in this particular cause before this court. The problem here is not whether California follows one rule or the other but whether the trial judge abused the discretion which was lodged with him in the granting of the motion for a new trial. Appellant places great reliance in *Cox* v. *Prudential Insurance Co.*, 172 Cal.App.2d 629 [343 P.2d 99] ; however that case came to this court upon an appeal from the judgment and not upon an appeal from an order granting a motion for a new trial. The rules which govern this court with reference to an appeal from a judgment and an appeal from an order granting a motion for a new trial are very different.

Appellant's theory of the case, very briefly stated, seems to be that the decedent turned on the gas shortly after 2 a. m. to asphyxiate himself but prior to dying he voluntarily became drunk and later, while so afflicted, he lit a match which caused the explosion which resulted in his death; that he did not die from asphyxiation because of the intervening agency of the explosion which was not intended.

The appellant may or may not be correct in her theory of what occurred. It is certain however that there was ample possibility of many other things taking place other than those for which the appellant contended. The trial judge was in a position to determine the credibility of the witnesses, to weigh the evidence, and to draw the inferences from such evidence as he saw it. It cannot be said that there was any abuse of his discretion under the circumstances.

No useful purpose would be served in setting forth the contentions of Aetna on its cross-appeal for, as heretofore indicated, we believe the trial court was well within its discretion in granting the motion for a new trial. The affirmance of the order granting the motion for a new trial leaves no final judgment in effect. The cross-appeal from the judgment is only operative if the order granting the motion for a new trial is reversed. See *Freeman* v. *LaMorte,* 148 Cal.App.2d 670, 675 [307 P.2d 734] ; 17 Southern California Law Review 94-96; Rules on Appeal, rule 3(a).

The order granting a new trial is affirmed.

The defendant's cross-appeal from the judgment is dismissed.

Wood, P. J., and Lillie, J., concurred.